## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JAMES MITCHELL,
    *Plaintiff*,

    v.                           No. 3:23-cv-902 (JAM)

ROBERT MARTIN *et al.*,
    *Defendants*.

### ORDER DISMISSING COMPLAINT PURSUANT TO 28 U.S.C. § 1915A

    Plaintiff James Mitchell is a prisoner in the custody of the Connecticut Department of Correction ("DOC"). He has filed a *pro se* complaint *in forma pauperis* under 42 U.S.C. § 1983 alleging that five prison officials violated his rights under the First, Fifth, Eighth, Eleventh, and Fourteenth Amendments to the U.S. Constitution, as well as the Connecticut Constitution, federal law, and state law. Based on my initial review, pursuant to 28 U.S.C. § 1915A, I will dismiss the complaint as to Michell's federal law claims for failure to allege plausible grounds for relief, and I will otherwise decline to exercise supplemental jurisdiction over Mitchell's state law claims.

### BACKGROUND

    Mitchell's claims arise from his confinement at Corrigan Correctional Center ("Corrigan") in New London, Connecticut.[1] He has more recently been transferred to a different correctional facility.[2]

---

[1] Doc. #16 at 2.
[2] Doc. #17.

Mitchell names five defendants: Corrigan Warden Robert Martin, Mail Clerk Officer Rachel Fontaine, and Corrections Officers Wright, Calderone, and Czikowsky.[3] The following facts as alleged in the amended complaint are accepted as true for the purposes of this ruling.[4]

In May 2023, Mitchell's previously scheduled call with his attorney was cancelled "due to a facility party for correctional officers."[5] He also claims that inmates do not have access to an adequate law library or legal assistance.[6]

Mitchell highlights several problems regarding his mail. Prior to the events outlined in the complaint, Mitchell filed, but ultimately withdrew, a suit against Fontaine and Martin in 2001 "for misconduct involving [Mitchell's] privileged mail."[7] On May 24, 2023, Mitchell received mail from his attorney that Fontaine had already opened.[8] In June 2023, Fontaine "began holding and delaying [Mitchell's] legal mail" in response to his complaints.[9] The next month, Fontaine gave Mitchell his "regular mail without an envelope and taped together" so that the "contents [could] be viewed by anyone."[10] Later that month, Fontaine refused to mail an envelope from Mitchell, claiming that the "request was improperly filled out."[11] Though Mitchell "notified" Martin's office about these incidents, no action was taken in response.[12]

In May 2023, Mitchell filed with Wright and Calderone multiple Freedom of Information Act ("FOIA") requests, which were unanswered.[13] Mitchell complained to Wright and Calderone

---

[3] Doc. #16 at 2–3.
[4] *See Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303 (2d Cir. 2020) ("an amended pleading ordinarily supersedes the original and renders it of no legal effect") (internal quotation marks and citation omitted); *see also* Doc. #15 (noting that the amended complaint is "the operative complaint in this action").
[5] Doc. #16 at 14 (¶¶ 28–29).
[6] *Id.* at 9 (¶¶ 1–2).
[7] *Id.* at 16 (¶ 41); *see* Doc. #117, *Mitchell v. Martin*, No. KNL-CV21-5022320-S (Conn. Super. Ct. 2022).
[8] Doc. #16 at 15 (¶¶ 33, 35).
[9] *Id.* at 16 (¶ 44).
[10] *Id.* at 16 (¶ 45).
[11] *Id.* at 17 (¶ 46).
[12] *Id.* at 17 (¶ 47).
[13] *Id.* at 17 (¶¶ 49–50).

2

but received no response.[14] Mitchell subsequently "wrote grievances to [Martin's] office" but Martin "condoned and ignored the violations, misconduct[,] and retaliation."[15] Mitchell had previously filed suit against Wright for a similar incident, but subsequently withdrew the action due to a global settlement.[16]

Mitchell was also denied contact and virtual video visitation at Corrigan.[17] Furthermore, Corrigan has an "inadequate phone system" such that the Wi-Fi for "prisoners['] personal tablets [o]n which telephone calls are made continuously drop calls."[18] Mitchell "wrote complaints and grievances" to Martin about this shortcoming but Martin "has not taken any action to fix" the Wi-Fi system.[19]

Mitchell's request for a transfer "to an appropriate facility where he can properly practice his religious freedoms" was rejected.[20] Moreover, "[M]artin's staff took [Mitchell's] religious items upon arrival" at Corrigan.[21] The confiscated items included Mitchell's "[N]ative [A]merican smudging materials."[22]

On or about September 13, 2023, Mitchell was brought to "a secluded location in the a/p area," and Czikowsky "ordered [him] to do a 'strip search.'"[23] After Mitchell removed his clothing, Czikowsky ordered Mitchell "to 'bend over' and 'spread his butt cheeks' and to let him

---

[14] *Id.* at 17 (¶ 51). In September 2023, Calderone told Mitchell "that she brought all of [Mitchell's] request responses to the mail room and does not know what happened after that." *Id.* at 18 (¶ 55).

[15] *Id.* at 17 (¶ 52), 18 (54).

[16] *Id.* at 17–18 (¶ 53); *see* Doc. #113, *Mitchell v. Spotten*, No. KNL-CV21-5022520-S (Conn. Super. Ct. 2022). Mitchell concedes that Calderone was not a party to that suit. Doc. #16 at 18 (¶ 55).

[17] Doc. #16 at 11 (¶ 15), 12 (¶ 20).

[18] *Id.* at 12 (¶ 24), 14 (¶ 26).

[19] *Ibid.*

[20] *Id.* at 11 (¶ 12).

[21] *Id.* at 11 (¶ 13).

[22] *Ibid.*

[23] *Id.* at 18 (¶ 57). The Court understands that the "a/p area" refers to the Admitting and Processing area of Corrigan. *See Granger v. Santiago*, 2021 WL 4133752, at *1 (D. Conn. 2021) (noting that strip searches at Corrigan occur in the Admitting and Processing ("AP") area).

see [Mitchell's] anus."[24] Mitchell initially refused but Czikowsky ordered him to comply or be placed "in solitary confinement."[25] Mitchell "felt concern for his safety due to the secluded area location" and because he, "a black man, was being aggressively ordered by a white correctional officer to bend over in a sexual position."[26] Mitchell therefore "had no choice but to comply" with the search.[27]

Mitchell was subsequently questioned about "if he had anything in his cell" and given a urine test, which was "negative for all drugs."[28] Mitchell later learned that his cellmate was subjected to a strip search, but not a "cavity search," and ordered "to take a urine test," which was "positive for drugs."[29]

Mitchell ultimately "contacted the PREA investigation unit hotline" and "notified the warden's office" about Czikowsky's actions.[30] Mitchell claims Czikowsky acted "in relation to [Mitchell's] race and because of [Mitchell's] well-known history of filing lawsuits against staff."[31]

Mitchell alleges that Martin's actions "constitute[] retaliation, equal protection, access to the court, religious freedoms[,] and cruel and unusual punish[ment]" in violation of the First, Fifth, Eighth, Eleventh, and Fourteenth Amendments to the U.S. Constitution as well as in violation of the Connecticut Constitution.[32] Mitchell further alleges that Martin's "condoning

---

[24] Doc. #16 at 19 (¶ 58).

[25] *Id.* at 19 (¶ 59).

[26] *Id.* at 19 (¶ 61).

[27] *Id.* at 19 (¶ 63).

[28] *Id.* at 21 (¶¶66, 70)

[29] *Id.* at 21 (¶¶ 65, 68, 70).

[30] *Id.* at 23 (¶¶ 74–75). The Court understands that "PREA" stands for the Prison Rape Elimination Act, 42 U.S.C. §§ 15601–15609, which was "the first federal law to address the sexual abuse of prisoners." *Crawford v. Cuomo*, 796 F.3d 252, 260 (2d Cir. 2015).

[31] Doc. #16 at 23 (¶ 76).

[32] *Id.* at 23 (¶ 77). Mitchell does not allege that the state constitution affords him any greater protection than the federal constitution. "Consistent with the Connecticut appellate court's policy regarding unaddressed claims under the Connecticut Constitution, the Court concludes that [Mitchell's] state constitutional rights are co-extensive with his federal constitutional rights in this circumstance." *Cozayatl Sampedro v. Schriro*, 377 F. Supp. 3d 133, 144 n.6

retaliation and abuse of authority by the [Corrigan] staff" violates the First, Eighth, and Fourteenth Amendments to the U.S. Constitution as well as the Connecticut Constitution.[33] Mitchell also alleges that Fontaine's actions "constitute[] retaliation, access to the courts[,] and equal protection in violation of the" First, Fifth, and Fourteenth Amendments to the U.S. Constitution as well as in violation of the Connecticut Constitution.[34]

Mitchell also alleges that pursuant to FOIA, Wright's actions "constitute[] equal protection, retaliation, abuse of authority[,] and due process" violations of the First, Fifth, and Fourteenth Amendments to the U.S. Constitution as well as the Connecticut Constitution.[35] He further alleges that, with respect to his FOIA requests, Calderone's actions "constitute[] equal protection and due process violations" of the First, Fifth, and Fourteenth Amendments to the U.S. Constitution as well as the Connecticut Constitution.[36]

In addition, Mitchell alleges that Czikowsky's "abuse of authority, violating [Mitchell's] privacy rights and retaliation constitutes violations of" the First, Eighth, and Fourteenth Amendments to the U.S. Constitution, and that his actions "constitute[] cruel and unusual punishment in violation of the" Eighth and Eleventh Amendments to the U.S. Constitution as well as in violation of the Connecticut Constitution.[37] Finally, Mitchell alleges violations of his rights under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 200bb, *et seq.*, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 200cc, *et seq.*, and Connecticut Executive Order No. 21-1.[38]

---

(D. Conn. 2019) (citing *Perez v. Comm'r of Corr.*, 326 Conn. 357, 383 (2017)).
[33] Doc. #16 at 25 (¶ 81).
[34] *Id.* at 23 (¶ 78).
[35] *Id.* at 25 (¶ 79).
[36] *Id.* at 25 (¶ 80).
[37] *Id.* at 25 (¶ 82).
[38] *Id.* at 11 (¶¶ 14, 17).

DISCUSSION

Congress by law requires that a federal court conduct an initial review of a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments they suggest. *See Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (*per curiam*).[39] Still, even a *pro se* complaint may not survive dismissal if its factual allegations do not establish plausible grounds for relief. *Ibid*.

### Injunctive and declaratory relief

Mitchell was transferred last month to a different state correctional facility. "It is settled law in this circuit that an inmate's transfer or release 'from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility.'" *Mitchell v. Annucci*, 2023 WL 7648625, at *2 (2d Cir. 2023) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006)). Accordingly, I will dismiss as moot Mitchell's claims for injunctive and declaratory relief.

### Fifth Amendment

The Fifth Amendment protects an individual against actions taken by the federal government. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due

---

[39] Unless otherwise indicated, this order omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

process of law.'"). Although Mitchell claims his Fifth Amendment rights were violated, "the Fifth Amendment Due Process Clause applies to federal, not state, inmates." *Jackson v. Walker*, 2022 WL 16573562, at *3 (D. Conn. 2022). Any claim for violation of rights under the Fifth Amendment is accordingly dismissed pursuant to 28 U.S.C. § 1915A(b)(1) but without prejudice to any cognate claim for violation of due process under the Fourteenth Amendment.

### Eleventh Amendment

The Eleventh Amendment bars "federal jurisdiction over suits against nonconsenting States." *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000). Despite Mitchell's allegations to the contrary, the Eleventh Amendment does not confer any individual rights. Any claim for violation of rights under the Eleventh Amendment is accordingly dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### Access to the courts

Mitchell claims his access to the courts was impeded by lack of access to an adequate law library and legal assistance, as well as by tampering with his legal mail and the cancellation of a previously scheduled call with his attorney. The Supreme Court has long recognized a constitutional right of access to the courts, notwithstanding that the right's precise source in the Constitution remains uncertain. *See Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002); *see also Miller v. Semple*, 2019 WL 6307535, at *4 (D. Conn. 2019). A right of access to the courts correlatively means a right to be free from obstruction of this right by the government. *See Whalen v. County of Fulton*, 126 F.3d 400, 406 (2d Cir. 1997). Accordingly, prisoners have a constitutional right of access to the courts that may not be unreasonably obstructed by the actions of prison officials. *See Washington v. James*, 782 F.2d 1134, 1138 (2d Cir. 1986).

To state a claim for denial of access to the courts, a plaintiff must demonstrate that he

suffered an actual injury. *See Lewis v. Casey*, 518 U.S. 343, 351–53 (1996). That is, he must allege that "defendant's conduct deprived him of an opportunity to press some nonfrivolous, arguable cause of action in court." *Baker v. Weir*, 2016 WL 7441064, at *2 (D. Conn. 2016) (quoting *Brown v. Choinski*, 2011 WL 1106232, at *5 (D. Conn. 2011)). What this means is "that the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation," and "the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Christopher*, 536 U.S. at 415–16. A plaintiff must describe "the predicate claim . . . well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Id.* at 416. In this manner, "the complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it." *Id.* at 417–18.

Here, for at least two reasons, Michell's allegations fall well short of plausibly alleging a claim based on denied access to the courts. First, Mitchell does not describe by name or with any precision any past or present legal claim or defense that has been thwarted by any of the defendants' actions. Second, he does not establish that any such actions are or were arguably meritorious and not frivolous. For these reasons, Mitchell does not adequately allege a cognizable claim for violation of his right of access to the courts. *See, e.g.*, *Spates v. Manson*, 644 F.2d 80, 85 (2d Cir. 1981) (the Sixth Amendment "right [to self-representation in a criminal proceeding] does not carry with it a right to state-financed library resources where state-financed legal assistance is available"); *Whitaker v. Evans*, 2019 WL 6700188, at *2–3 (D. Conn. 2019)

(dismissing claim "for failure to state an injury resulting from the mail interference"); *Ramos v. Dep't of Corr.*, 2016 WL 740394, at *2 (D. Conn. 2016) (dismissing denial of access to legal telephone call claim based on denial of request, on one occasion, to call attorney); *Abreu v. Travers*, 2016 WL 6127510, at *11 (N.D.N.Y. 2016) (dismissing complaint because the "plaintiff fails to allege any facts to plausibly suggest that a non-frivolous claim was actually hindered or prejudiced because of the alleged denial of access to legal materials"). Accordingly, any claim that Mitchell was denied access to the courts is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### First Amendment retaliation

Mitchell claims Martin, Fontaine, Wright, and Czikowsky retaliated against him. "[B]ecause prisoner retaliation claims are easily fabricated, and accordingly pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration," courts "are careful to require non-conclusory allegations." *Burns v. Martuscello*, 890 F.3d 77, 83–84 (2d Cir. 2018). A successful retaliation claim consists of three elements: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Id.* at 84.

The filing of a prison grievance or lawsuit constitutes protected activity under the first element required to state a retaliation cause of action. *See Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019); *Lewis v. Stango*, 2023 WL 4684666, at *5 (D. Conn. 2023). The lawsuits Mitchell filed in 2021 against Martin, Fontaine, and Wright clearly satisfy this element.[40]

An "adverse action," as required by the second element, has been understood as "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from

---

[40] *Id.* at 16 (¶ 41), 17–18 (¶ 53).

exercising . . . constitutional rights." *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004). Courts have found, however, that isolated instances of mail tampering and delay, even with privileged communications, are insufficient to support a retaliation claim. *See Bradshaw v. Annucci*, 2023 WL 4744735, at *14 (N.D.N.Y. 2023) (collecting cases); *Anderson v. Bender*, 2019 WL 3252914, at *4 (W.D.N.Y. 2019). Accordingly, Mitchell's retaliation claim against Fontaine is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Mitchell's retaliation claim against Martin is similarly unsuccessful. Mitchell claims he wrote to Martin and notified his office about the incidents with Fontaine, Wright, Calderone, and Czikowsky but received no response. "A bare allegation of a correction official's failure to investigate a grievance is inadequate to satisfy the adverse action requirement of a retaliation claim." *Smith v. Annucci*, 2019 WL 11727264, at *3 (N.D.N.Y. 2019); *see Houston v. Schriro*, 2013 WL 4457375, at *10 (S.D.N.Y. 2013) ("Ignoring grievances cannot support a First Amendment retaliation claim."). Accordingly, Mitchell's retaliation claim against Martin is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Mitchell's retaliation claim against Wright lacks the requisite causal connection between the protected activity and adverse action. To establish a causal connection between Mitchell's previous lawsuit and Wright's adverse action, Mitchell would have to allege facts "suggesting that the protected conduct was a substantial or motivating factor in the prison official's decision to take action against him." *Lewis*, 2023 WL 4684666, at *6. "Some of the facts often used to determine retaliatory motive include (1) temporal proximity between the protected conduct and the alleged retaliatory act, (2) the prisoner's prior good disciplinary record, (3) a finding of not guilty at the disciplinary hearing, and (4) statements by the officials showing motivation." *Ramos v. Semple*, 2019 WL 2422875, at *2 (D. Conn. 2019).

10

Mitchell has not alleged any facts to show that Wright was motivated to take adverse action against him because of his previous lawsuit. *See, e.g.*, *Lewis*, 2023 WL 4684666, at *5 (finding plaintiff's claim "wholly conclusory" because he "has not alleged any facts to support his claim that any Defendants were motivated to take adverse action against Plaintiff either because he sued the West Haven Police Department or because he filed an action for habeas relief"). Moreover, the timing of events does not support Mitchell's claim; Wright's allegedly retaliatory actions occurred a year and nine months after Mitchell filed suit and seven months after the lawsuit was withdrawn. Accordingly, Mitchell's retaliation claim against Wright is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The causal connection is similarly absent from Mitchell's retaliation claim against Czikowsky. The complaint provides no indication that Czikowsky was aware of Mitchell's previous lawsuits against Martin, Fontaine, and Wright. Even assuming that Czikowsky was aware of those actions, Mitchell has not provided any basis to believe that Czikowsky would retaliate for lawsuits in which he was not personally named as a defendant. *See Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 369 (S.D.N.Y. 2011) (collecting cases). Accordingly, Mitchell's retaliation claim against Czikowsky is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).[41]

### Religious exercise

Mitchell alleges an infringement of his right under the First Amendment to freely exercise his religion, as well as his statutory rights under the RFRA and RLUIPA. As an initial matter, the Supreme Court has held that the RFRA does not apply to state and local governments. *See City of Boerne v. Flores*, 521 U.S. 507 (1997). Because all of Mitchell's allegations are

---

[41] Mitchell does not bring an explicit retaliation claim against Calderone. To the extent, however, that Mitchell intended to lodge a retaliation claim against all defendants, such a claim against Calderone would fail for the same reasons as the retaliation claim against Czikowsky.

levied against state employees, his RFRA claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The First Amendment prohibits prison officials from substantially burdening prisoners in the exercise of their religious beliefs, absent a reason to do so that is reasonably related to legitimate penological interests. *See Brandon*, 938 F.3d at 32 (2d Cir. 2019). Relatedly, RLUIPA states that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Williams v. Annucci*, 895 F.3d 180, 188 (2d Cir. 2018) (quoting 42 U.S.C. § 2000cc-1(a)); *see also Holland v. Goord*, 758 F.3d 215, 224 (2d Cir. 2014) (noting that RLUIPA allows for injunctive relief but not for money damages claims against state officers in their individual or official capacities).

Mitchell claims his religious freedom was impinged by Martin's refusal to transfer him "to an appropriate facility where he can properly practice his religious freedoms."[42] "Although [Mitchell] has a right to practice his religion, he does not have a right to be incarcerated in the prison of his choice, even if he believes that other institutions would be more accommodating to his religious beliefs." *Greybuffalo v. Frank*, 2003 WL 23211615, at *5 (W.D. Wis. 2003). Indeed, courts across the country have recognized that prison inmates are not entitled to pick or choose their prisons based on access to facilities for religious practices. *See, e.g.*, *Moreno v. Terhune*, 84 F. App'x 818, 820 (9th Cir. 2003) ("We are simply not persuaded that the prison's failure to transfer [plaintiff] interfered with his practice of religion."); *Baltas v. Erve*, 2022 WL

---

[42] Doc. #16 at 11 (¶ 12).

4260672, *12 (D. Conn. 2021) (finding no clearly established right to transfer facilities for sweat lodge access); *Greybuffalo*, 2003 WL 23211615, at *5 (finding that defendant did not violate plaintiff's "right to freely exercise his religion by denying his request to transfer to another prison"). Accordingly, Mitchell's claims under the First Amendment and RLUIPA based on the denial of his transfer request are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Mitchell's allegations relating to the confiscation of his smudging materials appear, at first glance, to be more sustainable. *See Michalski v. Semple*, 2017 WL 4475994, at *7–8 (D. Conn. 2017) (permitting First Amendment and RLUIPA claims regarding, in part, the confiscation of a prisoner's smudging materials by prison staff to proceed). Mitchell, however, does not specify who amongst "[M]artin's staff" ultimately "took [his] religious items" that included his "[N]ative [A]merican smudging materials"[43] Thus, it appears that Mitchell is alleging a theory of supervisory liability under which he would hold Martin liable. The Second Circuit has ruled, however, that "there is no special rule for supervisory liability" and "a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). At the pleading stage, a plaintiff must plausibly allege each defendant's "personal involvement in the alleged constitutional deprivation" to establish his or her liability. *See Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).

Mitchell has not done so here with respect to Martin. Indeed, he makes no allegations that Martin or any of the other named defendants were personally involved in the confiscation of his "smudging materials." Accordingly, Mitchell's claims under the First Amendment and RLUIPA

---

[43] *Id.* at 11 (¶ 13).

based on the confiscation of his smudging materials are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### *Equal protection*

Mitchell contends that the defendants violated his Fourteenth Amendment right to equal protection. "The Equal Protection Clause . . . commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). In order to state a valid equal protection claim, "a plaintiff must allege facts showing that the plaintiff was treated differently from similarly situated individuals and that the reason for the different treatment was based on 'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Morgan v. Semple*, 2020 WL 2198117, at *19 (D. Conn. 2020) (quoting *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000)).

To the extent Mitchell claims that performance of the strip search discriminated against him on the basis of his race, that claim fails here.[44] Mitchell appears to allege that his cellmate was treated differently, as he was not subjected to the same "cavity search" that Mitchell underwent.[45] But the complaint includes no information from which the Court could infer that Mitchell's cellmate was a different race. Moreover, Mitchell has provided nothing more than conclusory claims that Czikowsky's search of him was motivated by his race. *See Gainey v. Pagel*, 2021 WL 2400256, at *3 (D. Conn. 2021). Accordingly, Mitchell's claim under the

---

[44] *See id.* at 23 (¶ 76).
[45] *Id.* at 21 (¶ 68).

Fourteenth Amendment based on racial discrimination is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Because Mitchell does not successfully advance allegations of class-based discrimination, his equal protection claims must be evaluated as a "class of one" in which he was intentionally and irrationally singled out. *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008). To succeed on this claim, Mitchell must "demonstrate the existence of a person who is '*prima facie* identical' to him and who was treated differently." *Conquistador v. Corcella*, 2023 WL 3006806, at*2 (D. Conn. 2023) (quoting *Hu v. City of New York*, 927 F.3d 81, 92 (2d Cir. 2019)). But Mitchell has advanced no such comparator. Rather, he claims in a conclusory fashion that his equal protection rights were violated. Accordingly, Mitchell's equal protection claims are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### *Strip search*

Mitchell claims that the strip search carried out by Czikowsky "constitute[d] cruel and unusual punishment in violation of the" Eighth Amendment.[46] "A prisoner's claim that he has been subject to a strip search may implicate both the Fourth Amendment right to be free from an unreasonable search and seizure, and the Eighth Amendment right to be free from cruel and unusual punishment." *Dunbar v. Dep't of Correction*, 2023 WL 143164, at *7 (D. Conn. 2023).

Although prisoners have certain privacy rights, prison officials have a compelling interest in the detection of contraband, and a strip search of a prisoner may be justified by legitimate security and penological objectives. *See, e.g.*, *Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318 (2012); *see also Harris v. Miller*, 818 F.3d 49, 63–65 (2d Cir. 2016) (*per curiam*) (discussing restrictions of the Eighth Amendment on visual body cavity searches); *Crawford v.*

---

[46] *Id.* at 25 (¶ 82).

*Cuomo*, 796 F.3d 252, 258 (2d Cir. 2015) (noting that "prison officials looking for contraband may subject inmates to reasonable strip searches and cavity searches").

The complaint makes clear that the search of Mitchell took place in the context of an investigation based on a "suspicion of drug activity" and included a strip search of Mitchell's cellmate and urine tests by both Mitchell and his cellmate.[47] Courts have found that searches similar to the one Mitchell experienced do not implicate Eighth Amendment concerns when performed in an attempt to uncover contraband. *See Shakur v. King*, 2020 WL 4271932, at *4–5 (D. Conn. 2020) (finding no cognizable Eighth Amendment claim for a strip search in which the inmate was ordered "to bend over and spread his buttocks"); *Galarza v. Erfe*, 2019 WL 121784, at *4 (D. Conn. 2019) (dismissing strip search claim where inmate was required to spread buttocks in connection with search for contraband); *see also Vaughn v. Strickland*, 2013 WL 3481413, at *5 (S.D.N.Y. 2013) (noting that "visual cavity searches have been consistently upheld as a legitimate penological restriction").

Nor is Czikowsky's threat of placing Mitchell in solitary confinement if he did not comply with the search sufficient to invoke the Eighth Amendment. "Allegations of threats or verbal harassment, without injury or damage, do not state a claim under 42 U.S.C. § 1983." *Holland v. City of New York*, 197 F. Supp. 3d 529, 546 (S.D.N.Y. 2016) (collecting cases). Accordingly, Mitchell's claims related to the strip search are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### *Visitation*

Mitchell appears to assert that several of his rights under the U.S. Constitution were violated by a lack of contact and video visitation. I will address each claim in turn.

---

[47] *Id.* at 21 (¶¶ 65–66, 68, 70). Mitchell alleges that his cellmate tested positive for drugs pursuant to the investigation. *Id.* at 21 (¶ 70).

The Supreme Court has observed that "[a]n inmate does not retain rights inconsistent with proper incarceration," and the First Amendment guarantee of "freedom of association is among the rights least compatible with incarceration." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). The Court has declined "to explore or define the asserted right of association at any length or determine the extent to which it survives incarceration." *Id.* at 132; *see also Malave v. Weir*, 750 F. App'x 65, 67 (2d Cir. 2019) (noting that "*Overton* did not consider whether there is a First Amendment right to visitation in prison"). Mitchell claims generally that "[M]artin['s] administration has impeded with [his] virtual video visitation" but does not describe the nature or duration of that interference or the role that defendants played.[48] *See Grullon*, 720 F.3d at 138. Because Mitchell fails to state a cognizable claim for the deprivation of his right to visitation under the First Amendment, any such claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

"In order to establish a violation of his Eighth Amendment rights, an inmate must show (1) a deprivation that is objectively, sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) a sufficiently culpable state of mind on the part of the defendant official, such as deliberate indifference to inmate health or safety." *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001). Though there may be visitation limitations that would implicate Eighth Amendment concerns, limitations more severe than those outlined in the complaint have not been deemed "sufficiently serious." *See Overton* 539 U.S. at 136–37 (ban on all visitation for two years); *Marrero v. Weir*, 2014 WL 4799228, at *3 (D. Conn. 2014) (inmate denied visitation with his mother); *see also Baltas v. Rizvani*, 2022 WL 17251761, at *14 (D. Conn. 2022) (noting that "an inmate has no Eighth Amendment right to visitation"). Because

---

[48] *Id.* at 12 (¶ 20).

Mitchell fails to state a cognizable claim for the deprivation of his right to visitation under the Eighth Amendment, any such claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

In analyzing the Fourteenth Amendment, this Court has not found that inmates have an "independent, fundamental constitutional right to visitation, contact or otherwise." *Green v. Santiago*, 2017 WL 2312355, at *6 (D. Conn. 2017) (collecting cases); *see, e.g.*, *Mercado v. Dep't of Corr.*, 2017 WL 1095023, at *3 (D. Conn. 2017) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 461 (1989)).

Even without a constitutional right to visitation, however, "state law may create enforceable liberty interests in the prison setting." *Thompson*, 490 U.S. at 461. But the present "Department of Correction Administrative Directive § 10.6 provides in relevant part that 'visitation shall be considered a *privilege* and no inmate shall have entitlement to a [social] visit.'" *Jan G. v. Semple*, 202 Conn. App. 202 (2021) (emphasis added); *see Malavé v. Weir*, 2018 WL 500644, at *7 (D. Conn. 2018) ("Connecticut prison regulations do not create a liberty interest in prison visitation"), *aff'd sub nom. Malave v. Weir*, 750 F. App'x 65 (2d Cir. 2019); State of Conn. Dep't of Corr., Admin. Directive 10.6 § 4(b) (effective Nov. 6, 2020).

Moreover, there is nothing on the face of Connecticut Executive Order No. 21-1 that purports to mandate contact visitation. *See* Conn. Exec. Order No. 21-1 (effective June 30, 2021) ("By October 1, 2021, the Department of Correction shall report on steps taken and to be taken to increase access to contact visits for incarcerated persons."). Indeed, this Court has "found no indication that the Order creates a private right of action." *Quint v. Lamont*, 2022 WL 17487978, at *3 (D. Conn. 2022). Because Mitchell fails to state a cognizable claim for the deprivation of his right to visitation under the Fourteenth Amendment or Connecticut state law, any such claims are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### *Telephone access*

Mitchell claims that Corrigan has an "inadequate phone system" such that the Wi-Fi that facilitates telephone calls "continuously drops calls."[49] But "prisoners do not have an absolute right to make phone calls." *Banks v. Argo*, 2012 WL 4471585, at *5 (S.D.N.Y. 2012); *see Griffin v. Cleaver*, 2005 WL 1200532, at *6 (D. Conn. 2005) (noting that there is "no constitutional right to telephone use"). Indeed, telephone access may be restricted provided that a prisoner has an alternate method of communication. *See Bradshaw v. Annucci*, 2023 WL 4744735, at *23 (N.D.N.Y. 2023) (collecting cases). While the complaint includes several allegations regarding the treatment of Mitchell's mail, nowhere does he claim that the mail system was an ineffective method of communication. Mitchell's invocation of Connecticut law is similarly unavailing, as "[v]iolations of state law are not cognizable under Section 1983."[50] *Crowder v. Farinella*, 2017 WL 3392546, at *6 (D. Conn. 2017) (citing *Pollnow v. Glennon*, 757 F.2d 496, 501 (2d Cir. 1985)).

The complaint appears to allege a theory of supervisory liability based on the lack of "any action to fix" the Wi-Fi, even though Mitchell "wrote complaints and grievances" to Martin.[51] But "a defendant's mere receipt of a letter or grievance, without personally investigating or acting thereon, is insufficient to establish personal involvement." *Evans v. Barone*, 2022 WL 408920, at *6 (D. Conn. 2022). Mitchell does not allege that Martin was even aware of the problem, such that liability could ensue. *See Tangreti*, 983 F.3d at 616–17. Accordingly, Mitchell's claim for violation of rights based on the deprivation of telephone calls is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

---

[49] *Id.* at 12 (¶ 24), 14 (¶ 26).
[50] *See id.* at 12 (¶ 25).
[51] *Id.* at 12 (¶ 24), 14 (¶ 26).

### *Freedom of Information Act*

Mitchell claims that Wright and Calderone "purposely fail[ed] to respond" to his FOIA requests.[52] Notably, however, a FOIA "violation is not also a violation of the First Amendment." *Book v. Lauretti*, 2022 WL 4944399, at *7 n.8 (D. Conn. 2022). Indeed, the Supreme Court "has repeatedly made clear that there is no constitutional right to obtain all the information provided by FOIA laws." *McBurney v. Young*, 569 U.S. 221, 232 (2013); *see Concepcion v. Green*, 2021 WL 5988613, at *7 (D. Conn. 2021). Accordingly, Mitchell's claims based on the violation of his rights under FOIA are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### *Supervisory liability*

Finally, Mitchell contends that Martin "condoned and ignored the violations, misconduct[,] and retaliation" by his co-defendants.[53] Specifically, Mitchell "wrote complaints and grievances" to Martin and "[M]artin's office" about the misconduct of his co-defendants but those actions were "overlooked" by Martin.[54]

As discussed above, "mere awareness of an issue is no longer sufficient to state a claim for supervisory liability." *Richard v. Corcella*, 2023 WL 4595695, at *4 (D. Conn. 2023); *see Tangreti*, 983 F.3d at 616–17. Mitchell claims that Martin failed to act based on communications from Mitchell, but it is not clear from the complaint that Martin received these communications; thus, these grounds are insufficient to allege Mitchell's personal involvement such that liability could attach. *See Evans*, 2022 WL 408920, at *6. Accordingly, any claim involving Martin's supervisory liability is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

---

[52] *Id.* at 17 (¶ 50).
[53] *See, e.g.*, *id.* at 18 (¶ 54).
[54] *See id.* at 16 (¶¶ 39, 42), 17 (¶ 52), 23 (¶ 75).

CONCLUSION

For the reasons set forth above, the Court DISMISSES the complaint without prejudice pursuant to § 28 U.S.C. § 1915A(b)(1) and DISMISSES Mitchell's subsequent motion (Doc. #12) as moot. Mitchell has not alleged plausible grounds for relief with respect to his federal law claims, and the Court otherwise declines in its discretion to exercise supplemental jurisdiction over his state law claims.

The Clerk of Court shall close this case. If Mitchell has good faith grounds to allege facts that overcome the concerns stated in this ruling, he may file an amended complaint on or before **December 22, 2023**, and the Court will then re-open the case to conduct another initial review of any timely amended complaint.

It is so ordered.

Dated at New Haven this 22nd day of November 2023.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge