UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JAMES MITCHELL,
    *Plaintiff*,

v.

No. 3:23-cv-902 (JAM)

ROBERT MARTIN *et al.*,
    *Defendants*.

**SECOND INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A**

Plaintiff James Mitchell is a prisoner in the custody of the Connecticut Department of Correction ("DOC"). He has filed a *pro se* complaint *in forma pauperis* under 42 U.S.C. § 1983 against three DOC officials for violations of his rights under federal law. The Court previously issued an initial review order dismissing Mitchell's claims. Mitchell has now filed an amended complaint with additional facts.

As set forth below, I will allow some of Mitchell's claims to proceed against particular defendants for tampering with his mail, for discriminating with respect to denial of access to a sweat lodge, and for a strip search. I will otherwise dismiss Mitchell's claims against all other defendants for failure to state plausible grounds for relief.

BACKGROUND

Mitchell's claims arise from his confinement at Corrigan Correctional Center ("Corrigan") in New London, Connecticut.[1] He has since been transferred to a different correctional facility.[2] Mitchell filed a complaint in July 2023, which he amended that month, and then filed a second amended complaint in September.[3] I dismissed the second amended complaint without prejudice pursuant to § 28 U.S.C. § 1915A(b)(1) because "Mitchell ha[d] not

---

[1] Doc. #22 at 3.
[2] Doc. #17.
[3] Docs. #1, #9, #16.

1

alleged plausible grounds for relief with respect to his federal law claims." *Mitchell v. Martin*, 2023 WL 8114344, at *10 (D. Conn. 2023).

Mitchell then filed a third amended complaint against three of the DOC defendants: Corrigan Warden Robert Martin, Mail Clerk Officer Rachel Fontaine, and Correctional Officer Czikowsky.[4] The following facts are derived from the allegations in the third amended complaint and are accepted as true only for the purposes of this ruling.

Mitchell was transferred to Corrigan on or about May 1, 2023.[5] Prior to his transfer, Mitchell "practiced his religion pursuant to sweat[] lodging and smudging" while incarcerated at MacDougall-Walker Correctional Institution ("MacDougall-Walker") in Suffield, Connecticut.[6] When Mitchell arrived at Corrigan, staff confiscated his "smudging materials and religious articles and prayer rugs."[7] Mitchell informed Martin about the confiscation "in person, via request form[,] and through a grievance."[8] But Martin told Mitchell that Corrigan did "not offer sweat lodge or smudging."[9] Mitchell "later learned that smudging was allowed at [C]orrigan."[10]

Throughout his time at Corrigan, Mitchell claims that he was denied access to the courts. He claims that Corrigan "did not offer an open facility library to help assist prisoners with researching preparing and filing grievances, legal papers for civil and/or criminal matters, [and] pre-conviction/post-conviction."[11] Because he was denied access to a law library, Mitchell

---

[4] Doc. #22 at 2–3.
[5] *Id.* at 7 (¶ 1).
[6] *Id.* at 12 (¶ 21).
[7] *Id.* at 11 (¶ 14).
[8] *Id.* at 12 (¶ 22).
[9] *Id.* at 11 (¶ 15).
[10] *Id.* at 13 (¶ 24).
[11] *Id.* at 7 (¶ 1).

2

alleges that his petition for writ of habeas corpus was dismissed and that he "could not properly pursue other criminal matters."[12]

Mitchell also claims "that the facility did not offer contact visitation."[13] He alleges that he "wrote request forms and grievances" to Martin about this denial.[14]

Mitchell makes several claims regarding interference with his mail. These actions occurred after a previous lawsuit Mitchell had filed against Fontaine for tampering with his mail was settled in July 2022.[15] Mitchell contends that, beginning in May 2023, his privileged mail "was opened outside [his] presence."[16] According to Mitchell, Fontaine "refused to mail-out" Mitchell's legal mail on multiple occasions and "attempted to overcharge [him] for postage."[17] Mitchell also claims that his "legal documents were being read and copied" by Fontaine, and his "mail was missing attorney-client confidential documents."[18] Mitchell recalls that Fontaine once "sent [his] regular mail and legal mail opened and without an envelope, only 'taped' together leaving the mail contents exposed for anyone's viewing."[19]

Mitchell also makes allegations related to a September 2023 strip search performed by Czikowsky.[20] That day, "facility supervisors entered the unit" and asked for the inmates assigned to Mitchell's cell.[21] Mitchell was subsequently "led to a secluded shower area" where Czikowsky ordered him "to bend over and 'spread your butt cheeks'" so that Czikowsky could "look at [Mitchell's] anus."[22] Mitchell initially refused because this was a "cavity search" but

---

[12] *Id.* at 8 (¶ 4), 10 (¶ 12).
[13] *Id.* at 13 (¶ 25).
[14] *Ibid.*
[15] *Id.* at 15 (¶ 31), 27–31.
[16] *Id.* at 14 (¶ 29).
[17] *Id.* at 16 (¶ 37).
[18] *Id.* at 15 (¶ 32), 17 (¶ 40).
[19] *Id.* at 16 (¶ 37).
[20] *Id.* at 18 (¶ 46).
[21] *Ibid.*
[22] *Id.* at 18 (¶¶ 47–48).

3

Czikowsky "threaten[ed] [Mitchell] with segregation if he did not comply."[23] Mitchell, "a black man, felt concern for his safety" in having this search performed by "a[n] aggressive white correctional officer."[24] But he ultimately acquiesced "in fear for his safety."[25] Mitchell's cellmate, who is "i[]dentical" to him, was also strip searched but not subjected to a "cavity search."[26] At the time of the search, Mitchell claims he "was not under any [individualized suspicion] for contraband."[27]

Mitchell alleges that Martin's actions "constitute[] equal protection violations under the 'class [of] one theory' for treating [Mitchell] differently from similarly situated persons" and "[F]irst [A]mendment violations for religious freedoms."[28] Mitchell further alleges that Martin denied him "access to the court."[29]

Mitchell further alleges that Fontaine's interference with his mail "constitutes retaliation" and deprives him of access to the courts.[30]

Mitchell further alleges that Martin and Fontaine's actions "constitute[] equal protection violations . . . by interfering and impeding his legal and regular mail."[31] Mitchell further alleges that their "actions constitute[] a violation of the continuing doctrine."[32]

Mitchell further alleges that Czikowsky's "actions constitute[] equal protection violations under the class [of] one theory," "a violation under invasion of privacy," and "cruel and unusual punishment."[33]

---

[23] *Id.* at 18 (¶ 49).
[24] *Id.* at 18 (¶ 50).
[25] *Id.* at 19 (¶ 52).
[26] *Id.* at 19 (¶ 53), 21 (¶ 63).
[27] *Id.* at 21 (¶ 60).
[28] *Id.* at 22–23 (¶¶ 1, 4); *see id.* at 23 (¶ 5).
[29] *Id.* at 9 (¶ 6).
[30] *Id.* at 22 (¶ 2).
[31] *Ibid.*
[32] *Id.* at 23 (¶ 6).
[33] *Id.* at 21 (¶ 61), 23 (¶ 3).

Mitchell further alleges that all three defendants violated DOC policies and directives.[34]

Mitchell seeks injunctive and declaratory relief, as well as an award of compensatory, punitive, and nominal damages from the defendants in their individual capacities.[35]

## DISCUSSION

Congress by law requires that a federal court conduct an initial review of a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments they suggest. *See Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (*per curiam*).[36] Still, even a *pro se* complaint may not survive dismissal if its factual allegations do not establish plausible grounds for relief. *Ibid*.

### *Injunctive and declaratory relief*

Mitchell was transferred in October 2023 to a different state correctional facility. "It is settled law in this circuit that an inmate's transfer or release 'from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility.'" *Mitchell v. Annucci*, 2023 WL 7648625, at *2 (2d Cir. 2023) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006)). Accordingly, I will dismiss as moot Mitchell's claims for injunctive and declaratory relief.

---

[34] *Id.* at 9 (¶ 8), 11 (¶ 18), 13–14 (¶¶ 25–26, 29), 18–19 (¶¶ 49, 55).
[35] *Id.* at 25.
[36] Unless otherwise indicated, this order omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

*Violation of DOC policies*

Mitchell claims all three defendants violated DOC policies and directives. But "allegations that a prison official violated the procedures set forth in an Administrative Directive or other policy do not state a claim of a violation of an inmate's constitutional rights." *Rosa v. Cook*, 2022 WL 7517256, at *5 (D. Conn. 2022). Accordingly, any claim that defendants violated DOC policies or directives is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

*Continuing violation doctrine*

Mitchell alleges that the defendants' actions are subject to the "continuing violation" doctrine. This doctrine is an exception to the statute of limitations and "'applies to claims composed of a series of separate acts that collectively constitute one unlawful practice' and delays the running of the limitations period until 'the defendant has engaged in enough activity to make out an actionable claim.'" *Gibbs v. Doe 1-7*, 2020 WL 7129584, at *5 (D. Conn. 2020) (quoting *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015)).

A civil rights claim brought pursuant to 42 U.S.C. § 1983 is subject to a three-year statute of limitations. *See Clark v. Hanley*, 89 F.4th 78, 91 (2d Cir. 2023). Mitchell was transferred to Corrigan in May 2023 and his claims relate to events that occurred while he was incarcerated there.[37] Mitchell's claims are therefore well within the statute of limitations, and I do not have cause to consider the "continuing violation" doctrine.

*Access to the courts*

Mitchell reasserts his claims that his access to the courts was impeded by lack of access to an adequate law library and tampering with his legal mail. As I previously observed, a plaintiff who claims he was denied access to the courts "must allege that 'defendant's conduct deprived

---

[37] Doc. #22 at 11 (¶ 14).

him of an opportunity to press some nonfrivolous, arguable cause of action in court.'" *Mitchell*, 2023 WL 8114344, at *4 (quoting *Baker v. Weir*, 2016 WL 7441064, at *2 (D. Conn. 2016)). Indeed, "the complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a)" and in a manner "well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Christopher v. Harbury*, 536 U.S. 403, 416–17 (2002).

But Mitchell has not done so here. Though Mitchell vaguely references a habeas corpus petition and various criminal matters, he has not described with any particularity which legal claims were inhibited by the defendants' actions.[38] *See Green v. Caron*, 2023 WL 1862950, at *6 (D. Conn. 2023) (dismissing claim based on denial of access to law library because plaintiff did not allege "actions that hindered his efforts to pursue a 'nonfrivolous' legal claim"); *Johnson v. Barone*, 2022 WL 344272, at *3 (D. Conn. 2022) (dismissing claim based on mail tampering because the plaintiff did not allege "the dismissal of an otherwise meritorious legal claim"); *Madison v. Crowley*, 2020 WL 2542636, at *9–10 (W.D.N.Y. 2020) (dismissing claim based on prison staff's "read[ing] all of Plaintiff's legal documents" because the complaint "offers no facts to explain how the Defendant's conduct materially prejudiced a legal action he sought to pursue"). Moreover, Mitchell has not established that these "actions are or were arguably meritorious and not frivolous." *Mitchell*, 2023 WL 8114344, at *4. Accordingly, any claim that Mitchell was denied access to the courts is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### First Amendment speech

Mitchell makes several allegations regarding interference with his legal and non-legal mail. In particular, he claims that Fontaine "opened [his] mail outside of [his] presence,"[39]

---

[38] *See id.* at 8–11 (¶¶ 4, 7, 12–13), 16 (¶ 39).
[39] *Id.* at 15 (¶ 30).

7

removed, read, and copied "attorney-client confidential documents,"[40] refused to mail his "legal (privileged) mail on multiple occasions,"[41] "attempted to over charge [him] for postage,"[42] and "on one occasion sent [his] regular mail and legal mail opened and without an envelope, only 'taped' together leaving the mail contents exposed."[43]

"In addition to the right of access to the courts, a prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment," *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003), and "courts have consistently afforded greater protection to legal mail than to non-legal mail, as well as greater protection to outgoing mail than to incoming mail," *Anduze v. City of New York*, 2022 WL 4586967, at *13 (S.D.N.Y. 2022). The Second Circuit has explained that while "an isolated incident of mail tampering is usually insufficient to establish a constitutional violation," allegations of "as few as two incidents of mail tampering could constitute an actionable violation (1) if the incidents suggested an ongoing practice of censorship unjustified by a substantial government interest, or (2) if the tampering unjustifiably chilled the prisoner's right of access to the courts or impaired the legal representation received." *Davis*, 320 F.3d at 351. "The inmate must show that prison officials 'regularly and unjustifiably interfered with the incoming legal mail.'" *Johnson*, 2022 WL 344272, at *3 (quoting *Davis*, 320 F.3d at 351).

Mitchell claims that the mail tampering occurred "on multiple occasions" but he was "not under any known restrictions" regarding his mail.[44] "When correction officers regularly and unjustifiably read prisoners' mail, whether legal or non-legal, it violates their First Amendment

---

[40] *Id.* at 15 (¶ 32), 17 (¶ 40).
[41] *Id.* at 16 (¶ 37).
[42] *Ibid.*
[43] *Ibid.*
[44] *Id.* at 16–17 (¶¶ 37, 41); *see also id.* at 16 (¶ 36) (noting that Mitchell "began to notice more tampering with his privileged mail and regular mail").

right to the free flow of incoming and outgoing mail. . . . Similarly, if officers regularly and unjustifiably withheld or threw away Plaintiff's mail, that would also violate his First Amendment rights." *Antrobus v. City of New York*, 2014 WL 1285648, at *4 (S.D.N.Y. 2014). Accordingly, I will allow Mitchell's claim that Fontaine tampered with his mail to proceed.

### *First Amendment retaliation*

Mitchell claims Fontaine retaliated against him. As I previously observed, "[a] successful retaliation claim consists of three elements: '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Mitchell*, 2023 WL 8114344, at *5 (quoting *Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018)).

"Protected speech or activity includes filing a lawsuit, an administrative complaint, or a prison grievance." *Richard v. Martin*, 2022 WL 5246814, at *8 (D. Conn. 2022) (citing *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015)). Mitchell's previously filed lawsuit against Fontaine satisfies this element.[45]

Even assuming mail interference constitutes adverse action,[46] Mitchell's retaliation claim lacks the requisite causal connection. "A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009). Approximately ten months elapsed between Mitchell's assent to the settlement of his lawsuit against Fontaine and the onset of the allegedly retaliatory behavior.[47] The Second Circuit has "not drawn a bright line to define the outer limits beyond

---

[45] *Id.* at 15 (¶ 31).

[46] This point is far from conceded, as courts "in the Second Circuit have generally held that mail tampering, even if it had occurred, does not constitute adverse action for purposes of a retaliation claim." *Green v. Sears*, 2013 WL 1081779, *14 (N.D.N.Y. 2013). But because I will dismiss Mitchell's retaliation claim for lacking the requisite causal connection, I will not reach this point.

[47] Doc. #22 at 31. Mitchell's signature on the settlement is dated July 25, 2022. *Ibid.* But he does not allege any interference with his mail until May 2023. *Id.* at 14 (¶ 29).

which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Ibid.* But courts in this Circuit have found that a period of nine months is too great to infer a causal connection. *Diggs v. Wood*, 2018 WL 4627120, at *6 (N.D.N.Y. 2018); *Girard v. Cuttle*, 2018 WL 4190140, at *7, (N.D.N.Y. 2018), *report and recommendation adopted sub nom. Girard v. Chuttey*, 2018 WL 4188431 (N.D.N.Y. 2018), *aff'd*, 826 F. App'x 41 (2d Cir. 2020). Accordingly, Mitchell's retaliation claim against Fontaine is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### *Religious exercise*

Mitchell reasserts an infringement of his First Amendment right to freely exercise his religion. As I previously observed, "[t]he First Amendment prohibits prison officials from substantially burdening prisoners in the exercise of their religious beliefs, absent a reason to do so that is reasonably related to legitimate penological interests." *Mitchell*, 2023 WL 8114344, at *6 (citing *Brandon v. Kinter*, 938 F.3d 21, 32 (2d Cir. 2019)).

Mitchell claims his religious freedom was infringed because Corrigan "does not offer [a] sweat lodge" in which he could practice his religion.[48] Prisoners do not have a clearly established right to require prisons to construct sweat lodges. *See Baltas v. Erfe*, 2022 WL 4260672, at *12 (D. Conn. 2022); *Buckles v. Crowe*, 2021 WL 1341887, at *6 (D. Mont. 2021). Accordingly, Mitchell's claim under the First Amendment related to the denial of access to a sweat lodge is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Mitchell further contends that his First Amendment right was infringed by the confiscation of his "smudging materials and religious articles and prayer rugs . . . by [C]orrigan cc intake staff."[49] As I previously observed, the confiscation of religious materials by prison staff

---

[48] *Id.* at 11 (¶ 15).
[49] *Id.* at 11 (¶ 14).

10

can be actionable under the First Amendment. *See Mitchell*, 2023 WL 8114344, at *7 (citing *Michalski v. Semple*, 2017 WL 4475994, at *7–8 (D. Conn. 2017)). But Mitchell does not identify the Corrigan staff who confiscated these items, nor has he named them as defendants.[50]

Thus, Mitchell seems to be alleging a theory of supervisory liability, under which he would hold Martin liable for the misconduct of lower-level prison employees. The Second Circuit has explained that "there is no special rule for supervisory liability," and "a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). But Mitchell has not made any allegation that Martin was personally involved in the confiscation of religious materials. And Mitchell's claim that he "notified the defendant [M]artin in person, via request form and through a grievance about the confiscation"[51] is insufficient because "mere awareness of an issue is no longer sufficient to state a claim for supervisory liability." *Richard v. Corcella*, 2023 WL 4595695, at *4 (D. Conn. 2023). Accordingly, Mitchell's claim under the First Amendment related to the confiscation of his religious materials is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### *Equal protection*

Mitchell lodges several claims that defendants violated his Fourteenth Amendment right to equal protection. A successful equal protection claim requires a plaintiff to "allege facts showing that the plaintiff was treated differently from similarly situated individuals and that the reason for the different treatment was based on 'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith

---

[50] *See id.* at 13 (¶ 23) (noting that Mitchell "could not read" the name of the Corrigan staff member who took these items).
[51] *Id.* at 12 (¶ 22).

intent to injure a person.'" *Morgan v. Semple*, 2020 WL 2198117, at *19 (D. Conn. 2020) (quoting *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000)); *see Mitchell*, 2023 WL 8114344, at *7. Absent a suspect classification, a plaintiff may proceed under a "class of one" theory by "alleg[ing] that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Fortress Bible Church v. Feiner*, 694 F.3d 208, 222 (2d Cir. 2012) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

Mitchell asserts that the defendants discriminated against him by denying him access to a law library, tampering with his mail, and denying him contact visitation. Mitchell has not alleged membership in a suspect class for the purposes of these claims because "prisoners in general are not a suspect class." *Rahim v. Martin*, 2023 WL 4745536, at *7 (D. Conn. 2023) (citing *Graziano v. Pataki*, 689 F.3d 110, 117 (2d Cir. 2012)).

Nor are these claims successful under a "class of one" theory of discrimination. To succeed on this theory, a plaintiff "must demonstrate the existence of a 'comparator'—someone who is 'prima facie identical'—who was treated differently." *Williams v. Mulligan*, 2023 WL 8258913, at *8 (D. Conn. 2023). But Mitchell has not identified any such comparator for the purposes of these claims. Accordingly, Mitchell's Fourteenth Amendment equal protection claims related to the denial of access to the law library, tampering with his mail, and denial of contact visitation are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Mitchell also claims that the strip search violated his right to equal protection. Mitchell alleges that as "a black man," he "felt concern for his safety" with Czikowsky, "a[n] aggressive white correctional officer."[52] But such allegations are insufficient to demonstrate that Mitchell

---

[52] *Id.* at 18 (¶ 50).

was treated differently *because of* his race. *See Jones v. Schortman*, 2023 WL 4157339, at *4 (D. Conn. 2023). Nor does Mitchell adequately plead this claim under a "class of one" theory. To be sure, Mitchell alleges that his cellmate was not subject to a "cavity search," even though he is "i[]dentical" to Mitchell.[53] But such a claim is "conclusory and devoid of factual support." *Gillums v. Semple*, 2018 WL 3715278, at *5 (D. Conn. 2018). Accordingly, Mitchell's Fourteenth Amendment equal protection claim related to the strip search is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Mitchell also claims that Martin selectively discriminated against him by denying him access to smudging. When Mitchell arrived at Corrigan, "[M]artin admitted that the facility does not offer sweat lodge or smudging."[54] But Mitchell "later learned that smudging was allowed at [C]orrigan."[55] Since Mitchell does not claim that he was discriminated against because of suspect classification or advance any comparators that were permitted to smudge, it appears that Mitchell is attempting to plead an equal protection violation under a theory of selective enforcement. "To state a selective enforcement claim, a plaintiff must allege facts showing that: (1) he or she was treated differently from similarly situated individuals and (2) that the discriminatory or different treatment was based on 'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Pagan v. Gagne*, 2022 WL 1239952, at *3 (D. Conn. 2022) (quoting *Diesel*, 232 F.3d at 103). But Mitchell has not alleged any facts to show that Martin's denial of smudging was motivated by any such animus. Accordingly, Mitchell's Fourteenth Amendment

---

[53] *Id.* at 19 (¶ 53), 21 (¶ 63).
[54] *Id.* at 11 (¶ 15).
[55] *Id.* at 13 (¶ 24).

equal protection claim related to the denial of access to smudging is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Mitchell also alleges that he was denied equal protection because he could not access a sweat lodge at Corrigan. Mitchell recalls that Martin informed him Corrigan "does not offer [a] sweat lodge."[56] But Mitchell "practiced his religion pursuant to sweat[] lodging" at MacDougall-Walker prior to his transfer to Corrigan.[57] As stated above, "[m]erely being a prisoner is insufficient to place [one] in a suspected class." *Robles v. Dennison*, 745 F. Supp. 2d 244, 301 n.18 (W.D.N.Y. 2010), *aff'd*, 449 F. App'x 51 (2d Cir. 2011). Nevertheless, "[c]ourts have applied rational basis analysis to equal protection claims where prison policies distinguished between non-suspect classes of prisoners." *Green v. Santiago*, 2017 WL 2312355, at *8–9 (D. Conn. 2017) (permitting equal protection claim involving "differential treatment of inmates housed at Corrigan, as opposed to those housed at [Cheshire Correctional Institution] or other comparable Connecticut institutions" to go forward); *see Beatham v. Manson*, 369 F. Supp. 783, 787–89 (applying rational basis to equal protection claim regarding different pay scales at Connecticut correctional institutions). The record does not reflect whether there is a rational basis for the provision of sweat lodges at some facilities but not at others. Accordingly, Mitchell's Fourteenth Amendment equal protection claim will proceed as to the differential access to a sweat lodge between inmates housed at Corrigan and those housed at MacDougall-Walker or other comparable Connecticut correctional institutions.

---

[56] *Id.* at 11 (¶ 15).
[57] *Id.* at 12 (¶ 21).

### *Strip search*

Mitchell claims that the strip search carried out by Czikowsky was "an invasion of privacy" and constituted "cruel and unusual punishment."[58] A prisoner's claim that he has been subjected to a strip search may implicate both the Fourth Amendment right to be free from an unreasonable search and seizure, and the Eighth Amendment right to be free from cruel and unusual punishment. *See Harris v. Miller*, 818 F.3d 49, 57–65 (2d Cir. 2016) (*per curiam*); *Dunbar v. Dep't of Corr.*, 2023 WL 143164, at *7 (D. Conn. 2023). For purposes of a Fourth Amendment claim, a court should consider whether the inmate has exhibited an actual, subjective expectation of bodily privacy and whether prison officials had sufficient justification to intrude on the inmate's privacy in the manner they did. *See Harris*, 818 F.3d at 57–63 (factors to consider include the scope of the particular intrusion, the manner in which it was conducted, the justification for initiating it, and the place in which it was conducted). For purposes of an Eighth Amendment claim, a court should consider if a strip search was done maliciously and sadistically, or if it was done for invidious reasons of intimidation, harassment, or embarrassment. *See id.* at 63–65.

Mitchell alleges that he was subjected to a strip search for no reason.[59] Accordingly, I will allow Mitchell's strip search claim to proceed against Czikowsky.

### *Supervisory liability*

Mitchell reasserts his claim that he filed grievances and wrote to Martin about the above claims,[60] but Martin "took no action."[61] Yet as I previously observed, "a defendant's mere receipt of a letter or grievance, without personally investigating or acting thereon, is insufficient

---

[58] *Id.* at 21 (¶ 61).
[59] *See id.* at 20–211 (¶¶ 56, 60).
[60] *Id.* at 11–13 (¶¶ 15, 22, 25).
[61] *Id.* at 9 (¶ 8), 15 (¶ 33).

15

to establish personal involvement." *Mitchell*, 2023 WL 8114344, at *10 (quoting *Evans v. Barone*, 2022 WL 408920, at *6 (D. Conn. 2022)). Accordingly, any claim involving Martin's supervisory liability is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

## CONCLUSION

In accordance with the foregoing analysis, the Court enters the following orders:

1. The Clerk of Court shall reopen this case.

2. The following claims against the following defendants may proceed: (1) Mitchell's First Amendment claim for mail tampering against Mail Clerk Officer Rachel Fontaine, (2) Mitchell's Fourteenth Amendment equal protection claim as to the differential access to a sweat lodge between inmates housed at Corrigan and those housed at MacDougall-Walker or other comparable Connecticut correctional institutions against Corrigan Warden Robert Martin, and (3) Mitchell's strip search claim against Correctional Officer Czikowsky.

3. All other claims and defendants are DISMISSED. Because Mitchell has now amended his complaint three times, these claims against the other defendants are dismissed with prejudice and without leave to further amend.

4. Within **twenty-one (21) days** of this Order, the Clerk shall ascertain from the Department of Correction Office of Legal Affairs the current work addresses for Mail Clerk Officer Rachel Fontaine, Corrigan Warden Robert Martin, and Correctional Officer Czikowsky and mail a waiver of service of process request packet to each defendant in his or her individual capacity at his or her current work address. On the **thirty-fifth (35th) day** after mailing, the Clerk shall report to the court on the status of all the requests. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and the defendant shall be required to pay the costs of such service in accordance with

Federal Rule of Civil Procedure 4(d).

5. Defendants shall file their response to the complaint, either an answer or motion to dismiss, **within sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. This initial review order has been issued *sua sponte* in accordance with 28 U.S.C. § 1915A and is without prejudice to the right of any defendant to seek relief by way of any motion pursuant to Rule 12 of the Federal Rules of Civil Procedure or other pleadings-level relief.

6. The discovery deadline is extended to **six months (180 days)** from the date of this Order. Note that discovery requests should not be filed with the Court. In the event of a dispute over discovery, the parties should make a good faith effort to resolve the dispute amongst themselves; then, the parties should file the appropriate motion to compel on the docket.

7. The deadline for summary judgment motions is extended to **seven months (210 days)** from the date of this Order. Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion (i.e., a motion to dismiss or a motion for summary judgment) **within twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the Court may grant the dispositive motion without further proceedings.

8. If Mitchell changes his address at any time during the litigation of this case, Local Court Rule 83.1(d)(1) provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Mitchell must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address.

9. Mitchell shall utilize the Prisoner E-Filing Program when filing documents with the

Court. He is advised that the Program may be used only to file documents with the Court. As discovery requests are not filed with the Court, the parties must serve discovery requests on each other by regular mail.

      10. The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to the plaintiff.

      It is so ordered.

      Dated at New Haven this 7th day of May 2024.

      /s/ *Jeffrey Alker Meyer*
      Jeffrey Alker Meyer
      United States District Judge