**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JAMES MITCHELL, | ) | |
| *Plaintiff*, | ) | CASE NO. 3:23-CV-902 (KAD) |
| | ) | |
| v. | ) | |
| | ) | |
| WARDEN ROBERT MARTIN, *et al.*, | ) | MARCH 31, 2026 |
| *Defendants*. | ) | |

## <u>MEMORANDUM OF DECISION</u>
### RE: [106] MOTION FOR SUMMARY JUDGMENT; [111] CROSS-MOTION FOR SUMMARY JUDGMENT

Kari A. Dooley, United States District Judge:

Plaintiff James Mitchell, a convicted state prisoner, filed this civil rights action *pro se* under 42 U.S.C. § 1983, against Defendants Warden Robert Martin, Mail Clerk Rachel Fontaine, and Correctional Officer Czikowsky for alleged violations of his constitutional rights while he was housed at Corrigan Correctional Center ("Corrigan") in the custody of the Connecticut Department of Corrections ("DOC"). Following initial review of Plaintiff's Third Amended Complaint ("TAC") under 28 U.S.C. § 1915A, the Court allowed the following individual capacity claims to proceed: (1) a First Amendment claim against Defendant Fontaine for mail tampering; (2) a Fourteenth Amendment equal protection claim against Defendant Martin; and (3) a Fourth and/or Eighth Amendment strip search claim against Defendant Czikowsky. *See* IRO, ECF No. 31 at 15-16. The parties have each moved for summary judgment. *See* Pl. MSJ, ECF No. 106; Defs. MSJ, ECF No. 111. For the reasons that follow, Plaintiff's Motion for Summary Judgment is **DENIED**, and Defendants' Motion for Summary Judgment is **GRANTED**.

**Procedural History**

On December 21, 2023, Plaintiff filed the TAC.  *See* ECF No. 22.  Following initial review, the Court allowed the following claims to proceed: (1) a First Amendment claim against Defendant Fontaine for mail tampering; (2) a Fourteenth Amendment equal protection claim against Defendant Martin, arising from the purported differential access to a sweat lodge between inmates housed at Corrigan and those housed at MacDougall-Walker or other comparable Connecticut correctional institutions; and (3) a strip search claim against Defendant Czikowsky.

On June 9, 2025, Plaintiff filed a Motion for Summary Judgment, which includes a supporting memorandum of law, a "Statement of Fact and Argument," a brief affidavit, and various exhibits.  Pl. MSJ, ECF No. 106.  Plaintiff did not submit a Statement of Undisputed Facts pursuant to Local Rule 56(a)1.  On July 18, 2026, Defendants filed a Cross Motion for Summary Judgment, as well as their related Local Rule 56(a)1 Statement of Undisputed Material Facts, a supporting memorandum of law, and numerous exhibits.  Defs. MSJ, ECF No. 111.  That same day, Defendants also filed their opposition to Plaintiff's Motion for Summary Judgment.  Defs. Opp., ECF No. 113.  On October 10, 2025, Plaintiff submitted a pleading titled, "Local Rule 56(a)(2) Statement of Undisputed Additional Facts," which contains additional factual assertions, a memorandum of law, and various exhibits (hereinafter, "Plaintiff's Opposition").  Pl. Opp., ECF No. 138.  Plaintiff's Opposition does not contain a Statement of Facts in Opposition to Defendants' Motion for Summary Judgment, pursuant to Local Rule 56(a)2.  Neither party has filed a reply in further support of their respective Motion for Summary Judgment.

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

As a threshold matter, the Court first addresses Plaintiff's Motion for Summary Judgment, which is, for various reasons, procedurally improper.  As indicated above, Plaintiff has neither

2

filed a statement of material facts in compliance with Local Rule 56(a)1, nor properly cited to or relied upon the exhibits attached to his Motion for Summary Judgment in accordance with Local Rule 56(a)3.[1]  Defendants argue that, as a result, Plaintiff's Motion for Summary Judgment should be denied.  The Court agrees.  It is not the Court's obligation to scour Plaintiff's submission and the record evidence to determine whether he has met his burden on summary judgment, or whether genuine issues of material fact persist.  *See S.E.C. v. Glob. Telecom Servs., L.L.C.*, 325 F. Supp. 2d 94, 108 (D. Conn. 2004) ("Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute."); *Iwachiw v. New York State Dep't of Motor Vehicles*, 396 F.3d 525, 529 n.1 (2d Cir. 2005) (*pro se* litigants are not exempt from compliance with relevant procedural rules, and courts should not "excuse . . . vexatious filings by *pro se* litigants") (citations omitted); *see also Donald v. Cook Cnty. Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996) ("the court is not to become an advocate . . .")).  Indeed, courts regularly reject summary judgment motions filed by *pro se* litigants that fail to comply with applicable procedural requirements, including Local Rule 56(a)1.  *See Tross v. Ritz Carlton Hotel Co. LLC*, 928 F. Supp. 2d 498, 503–04 (D. Conn. 2013) ("In this Circuit, a movant's failure to comply with a district court's relevant local rules on a motion for summary judgment permits, but does not require, a court to dispose of that motion."); *see, e.g.*, *Wilson v. McKenna*, No. 3:12-CV-

---

[1]  Local Rule 56(a)1 states that "[a] party moving for summary judgment shall file and serve with the motion and supporting memorandum a document entitled 'Local Rule 56(a)1 Statement of Undisputed Material Facts,' which sets forth, in separately numbered paragraphs meeting the requirements of Local Rule 56(a)3, a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried.  The Local Rule 56(a)1 Statement should include only those facts that are material to the decision of the motion."  Local Rule 56(a)3 provides, in pertinent part, that "[e]ach statement of material fact by a movant in a Local Rule 56(a)1 Statement . . . , must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial, or (2) other evidence that would be admissible at trial . . . [and] [t]he 'specific citation' obligation of this Local Rule requires parties to cite to specific paragraphs when citing to affidavits or responses to discovery requests and to cite to specific pages when citing to deposition or other transcripts or to documents longer than a single page in length.  Failure to provide specific citations to evidence in the record as required by this Local Rule may result in . . . the Court imposing sanctions, including, when the movant fails to comply, an order denying the motion for summary judgment . . ."

1581 (VLB), 2015 WL 5455634, at *3 (D. Conn. Sept. 15, 2015) (denying *pro se* prisoner's summary judgment motion without prejudice for failure to file a Local Rule 56(a)1 Statement and for failure to comply with Local Rule 56(a)3), *aff'd*, 661 F. App'x 750 (2d Cir. 2016); *Adeyemi v. Lightner*, No. 3:12-CV-1525 (JBA), 2014 WL 580226, at *4 (D. Conn. Feb. 12, 2014) (same); *see also Collins v. Experian Credit Reporting Serv.*, No. 3:04-CV-1905 (MRK), 2006 WL 2850411, at *1 (D. Conn. Oct. 3, 2006) ("*pro se* parties are not excused from abiding by the Federal Rules of Civil Procedure."). And relevant to this inquiry, it is worth recognizing that Plaintiff is an experienced litigator having brought multiple lawsuits in both state and federal court.[2] Accordingly, Plaintiff's Motion for Summary Judgment is **DENIED**.[3] However, the Court will consider the contents of Plaintiff's Motion, including the attached exhibits, when considering Defendants' Motion for Summary Judgment. *See Wilson*, 2015 WL 5455634 at *3.

---

[2] Plaintiff has filed the following additional civil cases in federal court: *Mitchell v. Walker, et al.*, Case No. 3:21-CV-307 (AWT); *Mitchell v. Owens, et al.*, Case No. 3:22-CV-446 (AWT); *Mitchell v. Schauer, et al.*, Case No. 3:23-CV-896 (VAB); and *Mitchell v. Maldonado, et al.*, Case No. 3:25-CV-253 (KAD). Defendants also indicate that Plaintiff has brought at least the following state court matters: *Mitchell v. Martin, et al.*, Case No. KNL-CV21-5022320-S; *Mitchell v. Martin, et al.*, Case No. KNL-CV21-5022477-S; *Mitchell v. King, et al.*, Case No. KNL-CV21-5022519-S; *Mitchell v. Spotten, et al.*, Case No. KNL-CV21-5022520-S; and *Mitchell v. Brennan*, Case No. KNL-CV21-5022548-S. *See* Defs. 56(a)1 at ¶ 5 (citing, *inter alia*, Defendants' Amended Answer, ECF No. 72, Exhibit A, General Release and Settlement Agreement).

[3] Generally, summary judgment motions filed by *pro se* litigants that fail to comply with Local Rule 56(a)1 are denied without prejudice. *See, e.g.*, *Wilson*, 2015 WL 5455634 at *3. Here however, insofar as the Court is granting Defendants' Motion for Summary Judgment, and has, in connection therewith, considered Plaintiff's Motion for Summary Judgment, the denial is with prejudice.

## DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

**Facts[4]**

The relevant facts are taken from Defendants' Local Rule 56(a)1 Statement ("Defs. 56(a)1"), as well as the various exhibits and other supporting evidence attached to both pending Motions for Summary Judgment.  All the facts set forth herein are undisputed unless otherwise indicated.

Plaintiff was housed at Corrigan from May 1, 2023 to October 19, 2023.  Defs. 56(a)1, ECF No. 111-1 at ¶ 1. Defendant Martin is currently the Warden of Osborn Correctional Institution, and from April 2020 through November 2023, he was the Warden of Corrigan.  *Id*. at ¶ 2.  Defendant Martin was on leave from Corrigan from the end of May 2023, through November 2023, and Deputy Warden Oles served as Acting Warden of Corrigan while Defendant Martin was absent.  *See id*.  Defendant Czikowsky is a corrections officer at Corrigan, where he has been assigned since August 2015.  *Id*. at ¶ 3.  Defendant Fontaine is a mail handler at Corrigan and has been since September 2018.  *Id*. at ¶ 4.

---

[4] As discussed above, in response to Defendants' Motion for Summary Judgment, Plaintiff submitted a filing entitled "Local Rule 56(a)(2) Statement of Undisputed Additional Facts."  Notwithstanding the title given to this submission, it does not comply with Local Rule 56(a)2 or respond to Defendants' Local Rule 56(a)1 statement.  As such,  the Court deems admitted Defendants' Statement of Facts, where supported by the record evidence.  *See* Local Rule 56(a)1; *Small v. Clements*, No. 3:18-CV-1731 (KAD), 2019 WL 5727388, at *1, n.1 (D. Conn. Nov. 5, 2019) (deeming uncontroverted facts admitted where a litigant failed to file a responsive statement of facts).  Nevertheless, as indicated above, given Plaintiff's status as a *pro se* litigant, in determining the existence of any genuine disputes of material fact, the Court has also considered, where appropriate, Plaintiff's Motion for Summary Judgment, Plaintiff's Opposition (or, his "Local Rule 56(a)(2) Statement of Undisputed Additional of Facts"); the verified TAC; and Plaintiff's deposition testimony.  *See Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("A verified complaint is to be treated as an affidavit for summary judgment purposes, and therefore will be considered in determining whether material issues of fact exist, provided that it meets the other requirements for an affidavit under Rule 56(e)."); *Conquistador v. Adamaitis*, No. 3:19-CV-430 (KAD), 2021 WL 810361, at *8 (D. Conn. Mar. 3, 2021) ("A party is bound by the facts he testifies to in a deposition and cannot defeat a motion for summary judgment by relying on a different version of events.").

The Mail Tampering Claim

In May 2023, a letter addressed to Plaintiff, postmarked May 18, 2023, was received at Corrigan (the "May 2023 Letter"). *Id*. at ¶ 8. The May 2023 Letter was not marked "legal mail[,]" and the return address was listed as: PAZ Law LLC, 4 Research Drive, Suite 402, Shelton, CT 06484.[5] *Id*. at ¶¶ 9-10. Defendant Fontaine received the May 2023 Letter and looked up the return address to verify whether the sender was a law firm or attorney. *Id*. ¶¶ 11-12. Defendant Fontaine identified the return address as belonging to "Hands to Heart Homecare," and thus, she wrote that immediately next to the return address on the envelope. *Id*. at ¶ 13. The address at 4 Research Drive, Suite 402, Shelton, CT 06484 is the business address of both PAZ Law LLC and Hands to Heart Home Care. *Id*. at ¶ 14.

Believing, albeit incorrectly, that the May 2023 Letter was merely social mail, Defendant Fontaine opened it to check for contraband, and then delivered it to Plaintiff with that day's social mail. *Id*. at ¶¶ 14-16. On May 25, 2023, Plaintiff reported to DOC officials and to Defendant Fontaine that his legal mail had been incorrectly delivered to him through the daily social mail. *Id*. at ¶ 17; *see also* Incident Report, ECF No. 138 at 49. Defendant Fontaine regularly handled inbound and outbound legal mail for Plaintiff. Defs. 56(a)1 at ¶¶ 20-21. For example, Defendant Fontaine sent mail for Plaintiff: (a) on May 4, 2023, that was dated May 2, 2023; (b) on May 4, 2023, that was dated May 3, 2023; (c) on June 29, 2023, that was dated June 28, 2023; (d) on June

---

5 Under DOC Administrative Directive ("A.D." or "Directive") 10.7 § 9, effective December 16, 2022, "[o]nly correspondence clearly identified as privileged correspondence on the outside of the envelope shall be treated as privileged correspondence. Correspondence not so identified shall be treated as general correspondence." An inmate's legal mail cannot be intentionally or purposefully opened outside of the inmate's presence. *Id.* at § 11. "If the privileged correspondence is opened accidently outside the presence of the inmate, the envelope shall be immediately resealed," the required inspection should then occur in the presence of the inmate, and an incident report must be completed. *Id.* at § 11(c). While it is not required for inbound legal mail to be specifically marked as "legal mail" or "legal correspondence," the practice is encouraged to avoid mistakes in identifying privileged mail. Defs. 56(a)1 at ¶ 7.

29, 2023, that was dated the same day; and (e) twice on July 10, 2023, that was dated July 7, 2023.[6]
*See id.* at ¶ 20(a)-(d). The May 2023 Letter was the only instance in which Defendant Fontaine opened legal mail outside of Plaintiff's presence when he was housed at Corrigan. *Id.* at ¶ 21.

The Sweat Lodge Claim[7]

A sweat lodge is a tent-like structure built in the shape of a dome using saplings, typically of willow, and the framed structure is covered with tarps or blankets. *Id.* at ¶ 22. Outside of the lodge is a wood-fueled firepit used to heat rocks, which are bought inside the lodge to a fireplace where water is poured over the rocks to create steam. *Id.* A sweat lodge is built outdoors, and a sweat lodge is used by followers of the Native American religion to cleanse themselves spiritually with the steam mist. *Id.* at ¶¶ 23-24.

Four DOC facilities host sweat lodges, and an average size sweat lodge at a DOC facility is 20 feet x 30 feet. *Id.* at ¶¶ 25-26. Corrigan's courtyard is approximately 20 feet x 50 feet; Corrigan has never had a sweat lodge; and Corrigan's courtyards are not conducive to supporting a sweat lodge. *Id.* at ¶¶ 27-29. Indeed, Corrigan's four exterior courtyards are walled-in, and thus, they are structurally isolated with no direct access from outside of the prison such that in the event of a fire, emergency personnel would be inhibited from providing emergency services. *Id.* at ¶¶

---

[6] Plaintiff states that his inmate account statement shows the dates he was charged for postage from May 2023, through October 2023, and that these dates for postage contradict the dates when Defendant Fontaine's claims she sent Plaintiff's outgoing mail. Pl. Opp. at 4 ¶ 11. The Court addresses this arguable discrepancy below.

[7] On initial review of the TAC, the Court dismissed Plaintiff's First Amendment claim related to the confiscation of his religious materials. *See* IRO at 11. Thus, the only claim proceeding against Defendant Martin is a Fourteenth Amendment equal protection claim regarding whether there is a rational basis for the provision of sweat lodges at MacDougall CI and comparable Connecticut Institutions, but not at Corrigan. *Id.* at 14. In Plaintiff's opposition, however, he appears to bring claims under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and the Connecticut Religious Freedom Act ("CRFA"). *See* Pl. Opp. at 32-34. It is also unclear as to whether Plaintiff is attempting to once again bring a claim pertaining to the confiscation of his religious items. *See id.* at 28-29. A Plaintiff may not amend his complaint through summary judgment briefing. *See Irizarry v. Lily Transportation Corp.*, 266 F. Supp. 3d 600, 604 (D. Conn. 2017) ("A complaint cannot be amended merely by raising new facts and theories in plaintiff's opposition papers, and hence such new allegations and claims should not be considered in resolving the motion for summary judgment.") (citation omitted). Accordingly, the Court will only consider the claim against Defendant Martin that was allowed to proceed on initial review, and will not consider any claim that was either not asserted in the TAC or was dismissed on initial review.

29(a).  Further, operating a sweat lodge in Corrigan's courtyard would pose a risk to ventilation because smoke produced by the fire could get drawn into the facility's air handlers, and it also would significantly reduce recreational options for the remaining inmates.  *Id*. at ¶¶ 29(b)-(c).

For those inmates that follow the Native American religion, they have access to Native American chaplains and group prayer circles, they can participate in independent and group smudging, annual holiday group meals, and native studies, and may possess and use some religious articles.  *See id*. at ¶¶ 30-35.  If an inmate at Corrigan wishes to participate in the practice of attending a sweat lodge, they can seek a transfer to another facility through the office of Offender Classification and Population Management.  *Id*. at ¶¶ 36, 36(b).

The Strip Search Claim

On September 13, 2023, prison staff suspected that there may be contraband in Plaintiff's cell.  *See id.* at ¶¶ 42-43.  That evening, Plaintiff was on the first floor in the recreation area when Lieutenant Pearson waved to him to come upstairs.  *See* Plaintiff Deposition Transcript ("Pl. Dep. Tr."), ECF No. 111-16 at 54:14-21, 60:21-61:6.  Plaintiff complied, and Officer Bennett escorted Plaintiff to the admitting and processing department ("A&P") area*.  Id*. at 62:20-63:22.

Plaintiff's cellmate was also brought down to the A&P area.  *Id*. at 80:8-22.  There, Lieutenants Pearson and Hackett spent a lot of time talking to Plaintiff's cellmate, including a conversation about faking urine and that the cellmate's urine was "dirty" at another facility.  *Id*. at 80:14-82:3.

Defendant Czikowsky was one of several officers working in the A&P when Plaintiff arrived.  Defs. 56(a)1 at ¶¶ 46-47.  Officer Perez was also working in the A&P.  *Id*. at ¶ 53. Defendant Czikowsky and Officer Perez's responsibilities included overseeing urinalysis testing and strip searches of inmates who were sent to the A&P.  *Id*. at ¶ 48.  On September 13, 2023,

Defendant Czikowsky had been advised by a supervisor that Plaintiff would be arriving for a strip search in connection with a urinalysis.[8]  *Id*. at ¶ 49.  After Plaintiff arrived at the A&P, Defendant Czikowsky and Officer Perez escorted him to the shower area of the A&P for a strip search.  *Id*. at ¶ 55.  Defendant Czikowsky then instructed Plaintiff to enter the enclosed shower stall portion of the shower area to remove his clothing while Officer Perez remained in the hallway.  *Id*. at ¶ 56.  No other inmates, nor DOC staff, were present during the strip search.  *Id*. at ¶¶ 57-58.  During the strip search, Defendant Czikowsky inspected Plaintiff's naked body, including his arms, mouth, bottoms of his feet, and genital area, and further instructed Plaintiff to bend over at the waist and spread his buttocks.[9]  *Id*. at ¶¶ 59-60.

Plaintiff objected to Defendant Czikowsky's instruction to bend and spread his buttocks, claiming that it was an unauthorized "cavity search."  *Id*. at ¶ 63.  Plaintiff also demanded that a supervisor attend the strip search, but Defendant Czikowsky told Plaintiff that he was not entitled to have a supervisor present, and that if Plaintiff did not comply, he could end up in the restrictive housing unit.  *Id*. at ¶¶ 63-64.  Plaintiff ultimately complied with Defendant Czikowsky's instructions, and at no time during the strip search did Defendant Czikowsky, Officer Perez, or anyone else touch Plaintiff.  *Id*. at ¶¶ 66-67.  Defendant Perez remained in the hall during the strip search of Plaintiff; Defendant Czikowsky remained directly outside of the shower area; and the strip search lasted less than four minutes.  *See* Sealed Video, ECF No. 111-17.

---

[8]  Plaintiff claims that Defendant Czikowsky contradicted himself, because Defendant Czikowksy asserts that he was ordered by a supervisor to strip search Plaintiff, despite his admission in an incident report that "I . . . was instructed by a supervisor to conduct a urinalysis on Inmate Mitchell. . . . [w]hen Inmate Mitchell arrived in A/P[,] this officer conducted a strip search per protocol for a urinalysis, without further incident."  *See* Pl. Opp. at 35; Incident Report, ECF No. 138 at 138.  Even if considered contradictory, the differences between the two narratives are immaterial.

[9]  DOC Directive 6.7, titled "Searches in Correctional Facilities," effective June 29, 2018, defines a strip-search as "a visual body cavity search which includes a systemic visual inspection of an unclothed person's hair, body cavities (to include the individual's ears, nose, mouth, under arms, soles of the feet and between the toes, rectum and genitalia)[,] . . . [and] a physical search of the clothing and any personal effects."  *See* A.D. 6.7 § (3)(p), ECF No. 111-15 at 3.  There are two approved methods that officers may use when conducting a visual inspection of an inmate's rectal cavity: the "bend and spread" and the "squat and cough."  Defs. 56(a)1 at ¶ 62.

After the strip search of Plaintiff, Defendant Czikowsky and Officer Perez escorted Plaintiff back to the main holding area of the A&P, and Plaintiff was placed into "a dry cell." Defs. 56(a)1 at ¶ 70. Lieutenant Pearson came to the dry cell and asked Plaintiff whether he would find Pruno in his cell. *See* Pl. Dep. Tr. at 83:24-25. Plaintiff responded "[a]bsolutely not[,]" and Lieutenant Pearson went to get a cup so that Plaintiff could give a urine sample. *Id*. at 83:25-84:5. Later, Officer Perez told Plaintiff that his urine had come back clean, but his cellmate's urine was positive. *Id*. at 84:23-87:6. Plaintiff later asked his cellmate whether officers had conducted a "bend and spread" strip search on him after his cellmate was escorted to the shower area for a strip search, and his cellmate told him, "No." *Id*. at 87:2-87:10. At approximately 10:05 p.m., Plaintiff was returned to his housing unit. Defs. 56(a)1 at ¶ 75.

**Standard of Review**

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113–14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense . . . ." *Giordano v. Mkt. Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010). In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation and internal quotation marks omitted).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth "specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). It cannot "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (quotation marks and citation omitted). Nor can it rely on "mere speculation or conjecture as to the true nature of the facts." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quotation omitted). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in its favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

**Discussion**

Defendants seek summary judgment on the grounds that: (1) there is no evidence that Defendant Fontaine opened Plaintiff's legal mail with "invidious intent" in violation of the First Amendment, and in any event, Plaintiff was not harmed by Defendant Fontaine's actions; (2) the undisputed facts demonstrate that Plaintiff was deprived of access to his sweat lodge religious practice for legitimate safety and logistical purposes, and not for any discriminatory reason in violation of the Fourteenth Amendment, and regardless, Defendant Martin is entitled to qualified immunity; and (3) no reasonable jury could find in favor of Plaintiff on his strip search claim, insofar as the strip search was conducted in furtherance of legitimate penological interests, and was otherwise performed lawfully, and in accordance with DOC policy. The Court agrees with Defendants, and will address each of Plaintiff's claims in turn.

11

<u>First Amendment – Mail Interference against Defendant Fontaine</u>

It is well-settled that "a prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). "Restrictions on prisoners' mail are justified only if they 'further[ ] one or more of the substantial governmental interests of security, order, and rehabilitation . . . [and] must be no greater than is necessary or essential to the protection of the particular governmental interest involved.'" *Id.* (quoting *Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986)).

"To establish a claim for interference with regular, non-legal mail in violation of the First Amendment, an inmate 'must show a pattern and practice of interference that is not justified by any legitimate penological concern.'" *Singleton v. Williams*, No. 12-CV-2021 (LGS), 2014 WL 2095024, at *3 (S.D.N.Y. May 20, 2014) (citation omitted). Thus, "an isolated failure to mail an inmate's [non-legal] letter does not state a constitutional violation." *Edwards v. Horn*, No. 10-CV-6194 (RJS), 2012 WL 760172, at *7 (S.D.N.Y. Mar. 8, 2012) (citations omitted). Legal mail, however, is "afforded greater protection," and interference therewith may constitute a violation of both the right to free speech under the First Amendment, as well as the right of access to the courts under the First and Fourteenth Amendments. *See Singleton*, 2014 WL 2095024 at *4 (citing *Davis*, 320 F.3d at 351). To establish a free speech violation involving legal mail, an inmate must demonstrate that prison officials "regularly and unjustifiably interfered with the incoming legal mail," and "an isolated incident of mail tampering is usually insufficient to establish a constitutional violation." *Id.* (quoting *Cancel v. Goord*, No. 00-CV-2042 (LMM), 2001 WL 303713 at *6 (S.D.N.Y. Mar. 29, 2001)). The Second Circuit has recognized that "as few as two incidents of mail tampering could constitute an actionable violation (1) if the incidents suggested an ongoing practice of censorship unjustified by a substantial government interest, or (2) if the

12

tampering unjustifiably chilled the prisoner's right of access to the courts or impaired the legal representation received." *Davis*, 320 F.3d at 351. Yet, "district courts have generally required specific allegations of invidious intent or of actual harm where the incidents of tampering are few and thus the implication of an actionable violation is not obvious on its face." *Id.*

Here, it is undisputed that on one occasion, Defendant Fontaine opened Plaintiff's legal mail outside of his presence, and that Defendant Fontaine otherwise generally handled Plaintiff's mail properly, including timely sending his outgoing mail. Indeed, Plaintiff asserts: "[o]nce the defendant illegally opened the plaintiff's mail and reviewed its contents per general correspondence policy, confidentiality was broken and the constitutional violation occurred." Pl. Opp. at 15. Plaintiff is incorrect. Even if Defendant Fontaine's opening of the May 2023 Letter was improper, such an isolated incident is plainly insufficient to demonstrate a constitutional violation.[10] *See Davis*, 320 F.3d at 351. And Plaintiff's effort to prove (or to create a genuine issue of material fact regarding) an ongoing pattern and practice of interference on the part of Defendant Fontaine, is unavailing. Plaintiff asserts that Defendant Fontaine (a) purposefully opened Plaintiff's legal mail from PAZ Law LLC; (b) falsely claimed that Plaintiff's mail, including his legal mail, was being held until payment was made by the facility counselor; (c) delayed mailing at least ten pieces of Plaintiff's legal mail and regular mail; and (d) attempted to overcharge Plaintiff for postage on two pieces of legal mail. *See* Pl. Opp. at 11-27. Plaintiff relies on various exhibits in support of these claims, including mail receipts, inmate account statements,

---

[10] Plaintiff also claims that Defendant Fontaine was not authorized to inspect his mail under A.D. 10.7. *See* Pl. Opp. at 13-14. He is wrong. A.D. 10.7 § 7(a), provides "[a]ll incoming general correspondence shall be opened and inspected for contraband and money and shall be subject to being read by person(s) designated by the Unit Administrator." A.D. 10.7 § 7(b)(i) further states that "[t]he decision to take any action provided for in this section shall be made by the designee of the Unit Administrator. Such designee shall not be the same person(s) who performed the initial mailroom review." *Id.* at § 7(b)(i). The term "taking any action" is a reference to the outright rejection of the correspondence. *Id.* at § 7(b)(ii). Here, Plaintiff's correspondence was not rejected, but instead inspected and placed with the daily social mail.

legal mail envelopes, and returned mail. *See generally* Pl. Opp. The exhibits relied upon do not, as Plaintiff posits, establish the narrative he puts forth. Defendant Fontaine denies these allegations, *see* Fontaine Decl., ECF No. 111-4 at ¶¶ 36-41, and also offers an explanation for why mail might be legitimately delayed on occasion. For his part, Plaintiff identifies a few discrepancies between the dates Defendant Fontaine claimed to have sent Plaintiff's outgoing mail, and the dates in Plaintiff's inmate account statement reflecting the dates on which postage charges were withdrawn.[11] Yet, at most, and even assuming postage charges appear on the same day mail is sent—an assumption not clear on the present record—this evidence suggests that Defendant Fontaine may have carelessly or negligently processed Plaintiff's mail, resulting in brief delays. It simply does not demonstrate or even create a genuine issue of material fact as to whether Defendant Fontaine's conduct amounted to unjustified government censorship or tampering with Plaintiff's mail in a manner that rises to the level of a First Amendment constitutional violation. This is particularly so, given that, ultimately, all of Plaintiff's outgoing mail was sent. *See Gibson v. Reardon*, No. 22-CV-723 (DJS), 2025 WL 2527532, at *6 (N.D.N.Y. Aug. 11, 2025), *report and recommendation adopted*, 2025 WL 2505539 (N.D.N.Y. Sept. 2, 2025) (awarding summary judgment to defendant where plaintiff had not alleged that he suffered any harm, the record demonstrated that defendant delivered mail to plaintiff on other dates about which plaintiff made no allegations of misconduct, and even accepting plaintiff's allegations as true, the two incidents alleged did not demonstrate an "ongoing practice of censorship"); *Walker v. New York City*, No. 23-CV-6383 (LTS), 2023 WL 6608476, at *5 (S.D.N.Y. Oct. 10, 2023) (finding claims that prison staff opened, damaged, and "blocked" plaintiff's mail did not suggest actions that demonstrated

---

[11] Plaintiff asserts that Defendant Fontaine acted intentionally and insidiously. The Court does not question the sincerity of Plaintiff's belief in this regard. But the record evidence he relies upon simply does not demonstrate any such motive, at least not without a heavy dose of cynicism and conjecture added into the analysis.

unjustified government censorship or tampering, and did not rise to the level of a constitutional violation). Likewise, Plaintiff's assertion that Defendant Fontaine was aware that Plaintiff was represented by Attorney Paz does not of itself indicate that Defendant Fontaine intentionally interfered with Plaintiff's legal mail. Finally, and significantly, there is no evidence suggesting that Defendant Fontaine, by opening the May 2023 Letter, unjustifiably (or at all) chilled Plaintiff's right of access to the court or impaired his legal representation. *See Davis*, 320 F.3d at 351.

For all of the foregoing reasons, the Court finds that no reasonable jury could determine that Defendant Fontaine intentionally interfered or tampered with Plaintiff's mail in violation of the First Amendment. Thus, Defendant Fontaine is entitled to summary judgment.

Fourteenth Amendment– Equal Protection (Sweat Lodge) against Defendant Martin[12]

The dictates of the Equal Protection clause are essentially "that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). The highest level of constitutional scrutiny is applied to "those laws that burden a fundamental right or target a suspect class, such as those based on race, national origin, sex or religion." *Pedersen v. Off. of Pers. Mgmt.*, 881 F. Supp. 2d 294, 309 (D. Conn. 2012) (citation omitted). If the law does not implicate a fundamental right or target a suspect class, the law will survive constitutional scrutiny "so long as it bears a rational relation to some legitimate end." *Romer v. Evans*, 517 U.S. 620, 631 (1996).

---

[12] "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). Plaintiff arrived at Corrigan on May 1, 2023 while Defendant Martin was the Warden. Less than three weeks later, Defendant Martin was on leave and did not return to Corrigan until after Plaintiff was transferred to a different facility. *See* Defs. 56(a)1 at ¶ 2(b). It is difficult to ascertain his "personal involvement" in the decision not to give Plaintiff access to a sweat lodge when he was not there for almost the entirety of Plaintiff's designation to Corrigan. Nor did Defendant Martin, even had he been present, have the authority to transfer Plaintiff to a facility that permitted sweat lodging. Finally, there is no indication that even if present, Defendant Martin would have had the authority to construct a sweat lodge at Corrigan. Notwithstanding these significant deficiencies in Plaintiff's proof, the Court addresses the merits of his constitutional claim.

Plaintiff challenges the provision of a sweat lodge to some prisoners at other DOC facilities but not to him, while housed at Corrigan.  To start, prison inmates do not comprise a suspect class. *See Robles v. Dennison*, 745 F. Supp. 2d 244, 301 n.18 (W.D.N.Y. 2010), *aff'd*, 449 F. App'x 51 (2d Cir. 2011).  Therefore, "[c]ourts have applied rational basis analysis to equal protection claims where prison policies distinguished between non-suspect classes of prisoners." *Green v. Santiago*, No. 3:16-CV-1724 (CSH), 2017 WL 2312355, at *8 (D. Conn. May 26, 2017).  In the prison context "the reasonableness of the prison rules and policies must be examined to determine whether distinctions made between religious groups in prison are reasonably related to legitimate penological interests." *Benjamin v. Coughlin*, 905 F.2d 571, 575 (2d Cir. 1990).  Applying this test to Plaintiff's equal protection claim, the Court assesses whether the policy of allowing sweat lodges in other Connecticut prisons, but not at Corrigan, is rationally related to any penological interest.

Here, Defendant Martin has established a rational basis for the failure to have a sweat lodge at Corrigan.  More specifically, the undisputed facts demonstrate that the policy at Corrigan is reasonably related to legitimate penological interests, including: (a) consideration of the size of the courtyard at Corrigan compared to other facilities; (b) the fact that there is no outside access to the courtyard at Corrigan in the event of a fire or other emergency arising from the operation of a sweat lodge; (c) the risk of smoke entering the ventilation system; and (d) the commensurate reduction of recreation options for other inmates if a sweat lodge were built in the courtyard.  *See* Defs. 56(a)1 at ¶¶ 25-29; *see, e.g.*, *Baltas v. Chapdelaine*, 153 F.4th 328, 339–40 (2d Cir. 2025) ("[T]here is no clearly established right to demand construction of a sweat lodge."); *Pevia v. Hogan*, 443 F. Supp. 3d 612, 641 (D. Md. 2020) (equal protection claim was unsupported where no inmates at correctional institution were provided access to sweat lodge ceremonies, and there

16

was no evidence of discriminatory intent); *Cryer v. Clarke*, No. 09-CV-10238 (PBS), 2012 WL 6800791, at \*10 (D. Mass. Sept. 7, 2012) (prohibiting monthly access to a sweat lodge served the compelling interest of maintaining security and safety, and an outright ban on access to sweat lodge ceremonies was the least restrictive means of achieving that interest). Accordingly, Defendant Martin is entitled to summary judgment on Plaintiff's equal protection claim.

Fourth Amendment – Strip Search against Defendant Czikowsky[13]

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. While "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell," *Hudson v. Palmer*, 468 U.S. 517, 526 (1984), "inmates do retain a limited right to bodily privacy," *Covino v. Patrissi*, 967 F.2d 73, 78 (2d Cir. 1992). Thus, in the prison context, the Fourth Amendment proscribes unreasonable strip searches. *See Bell v. Wolfish*, 441 U.S. 520, 558 (1979); *Harris*, 818 F.3d at 58. As relevant here, "if the inmate's Fourth Amendment claim challenges an isolated search, courts typically apply the standard set forth in *Bell*[.]" *Baltas v. Jones*, No. 24-100-PR, 2025 WL 3628204, at \*4 (2d Cir. Dec. 15, 2025) (summary order) (quoting *Harris*, 818 F.3d at 58). Under *Bell*, "[t]he following four factors should be considered to decide if a prison search was unreasonable: (1) the scope of the intrusion; (2) the manner in which it was conducted; (3) the justification for initiating it; and (4) the place in which it was conducted." *Crenshaw v. Ross*, No. 3:25-CV-479 (SFR), 2025 WL 3514682, at \*4 (D. Conn.

---

[13] For avoidance of doubt, to the extent Plaintiff is asserting a strip search claim arising under the Eighth Amendment, Defendant Czikowsky is entitled to summary judgment on any such claim. Under the Eighth Amendment, the court considers if a strip search was done "maliciously and sadistically," or for invidious reasons of intimidation, harassment, or embarrassment. *Harris v. Miller*, 818 F.3d 49, 65 (2d Cir. 2016). Yet, here, there is simply no evidence in the record suggesting that the strip search at issue was done maliciously and sadistically, or to intimidate, harass, or embarrass Plaintiff. Conversely, as set forth herein, the undisputed facts demonstrate that the strip search was conducted in an effort to detect contraband. Plaintiff's accusatory and conclusory assertions to the contrary are unsupported and ultimately unpersuasive.

Dec. 8, 2025) (citations and internal quotation marks omitted). A strip search violates the Fourth Amendment "if it is unrelated to any legitimate penological goal or if it is designed to intimidate, harass, or punish." *Jean-Laurent v. Wilkerson*, 438 F. Supp. 2d 318, 323 (S.D.N.Y. 2006) (collecting cases), *aff'd*, 461 F. App'x 18 (2d Cir. 2012). As relevant here, "[t]he United States Supreme Court has upheld the use of the "bend and spread" form of strip search by prison officials[,]" so long as the search was otherwise reasonable. *Lewis v. Erfe*, No. 3:17-CV-1764 (VLB), 2020 WL 1531332, at *14 (D. Conn. Mar. 30, 2020) (citing *Bell*, 441 U.S. at 558 n.39, 560-61); *see also Florence v. Board of Chosen Freeholders*, 566 U.S. 318, 328 (2012) (recognizing that "correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities").

Here, the following facts are undisputed: (1) on September 13, 2023, Lieutenant Pearson sent Plaintiff and his cellmate to the A&P area, based on a suspicion that there was contraband in their cell; (2) both Plaintiff and his cellmate were searched in the shower area, but Plaintiff was the only one that was required to conduct a "bend and spread" strip search; (3) based on the video evidence in the record,[14] Officer Czikowsky never touched Plaintiff, and the strip-search lasted less than four minutes; and (4) Plaintiff had a urinalysis conducted after his strip search, and while his urine results were negative, his cellmate's urine tested positive. Based on the foregoing undisputed facts, the Court concludes that Plaintiff's strip search was not unreasonable and therefore not unconstitutional under the Fourth Amendment. First, Plaintiff's strip search took place in the context of an investigation for prison contraband, and on the suspicion that he and/or his cellmate possessed such contraband. In that regard, the strip search was related to a legitimate

---

[14] "Where the parties present conflicting versions of an incident and video evidence of the incident has been submitted on a motion for summary judgment, the court must view the facts 'in the light depicted by the video' of the incident." *Olivencia v. Pun*, 3:21-CV-739 (OAW), 2022 WL 4329343, at *2 n.3 (D. Conn. Sept. 19, 2022) (quoting *Scott v. Harris*, 550 U.S. 372, 380–81 (2007)).

penological interest. *See Galarza v. Erfe*, No. 3:18-CV-663 (JAM), 2019 WL 121784, at *4 (D. Conn. Jan. 7, 2019) ("prison officials have a compelling interest in the detection of contraband."). Additionally, the search was conducted in a private area in front of only one correctional officer, Defendant Czikowsky, with the other correctional officer outside of view. *See Dixon v. Santiago*, No. 3:15-CV-1575 (JAM), 2015 WL 9582729, at *3 (D. Conn. Dec. 30, 2015) (dismissing Fourth and Eighth Amendment claims for damages based on strip search filmed and conducted in view of other inmates and correctional staff). Moreover, the manner and relatively limited duration of Plaintiff's "bend and spread" search were consistent with DOC's interest in detecting contraband in its prison facilities. *See Galarza*, 2019 WL 121784 at *4 (acknowledging that challenges to "bend and spread" searches have been upheld where justified by legitimate penological objectives); *see also Florence*, 566 U.S. at 328.

The Court finds that no reasonable jury could conclude that Defendant Czikowsky lacked any penological justification for conducting Plaintiff's strip search or that the search was unreasonable in the manner in which it was conducted.[15] Accordingly, Defendant Czikowsky is entitled to summary judgment on Plaintiff's Fourth Amendment claim.

---

[15] Plaintiff contends that in his twenty-two years of incarceration, he has never been strip-searched by two officers, nor has he ever been required to bend over and spread his buttocks. Pl. Opp. at 36. Plaintiff further submits that there is no evidence or DOC policy that supports the "bend and spread" style of strip search. *Id.* at 37. Plaintiff also submits an affidavit from an inmate who worked in the A&P area in 2023, which indicates that Defendant Czikowsky regularly took urine tests on inmates without conducting any strip searches. *See* Dixon Decl., ECF No. 106 at 192 ¶ 2. Plaintiff claims that "no supervisor ordered" Defendant Czikowsky to take a urinalysis or to conduct a strip search, and that Defendant Czikowsky has presented no evidence that either Lieutenant Pearson or Hackett, the only supervisors present at that time, ordered him to conduct a strip search. Pl. Opp. at 35-36. These assertions are unpersuasive, and do not preclude Defendant Czikowsky's entitlement to summary judgment. First, Plaintiff's prior experience while incarcerated has no bearing on the constitutionality of the strip search at issue in this case, and the use of the "bend and spread" search is supported by sworn declarations submitted by Defendant Czikowsky, and Officer Perez. *See* Czikowsky Decl., ECF No. 111-12 at ¶ 39; Perez Decl., ECF No. 111-13 at ¶ 17. Additionally, whether or not Defendant Czikowsky was ordered to conduct the strip search or was acting pursuant to protocol, *see supra* n.8, bears not on the manner and scope of the search, nor the penological interest served.

19

**Conclusion**

For all of the foregoing reasons, Plaintiff's Motion for Summary Judgment is **DENIED**, and Defendants' Motion for Summary Judgment is **GRANTED**. The Clerk of Court is directed to enter judgment for Defendants and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 31st day of March 2026.

 /s/ Kari A. Dooley
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE

20